IN THE CIRCUIT COURT OF THE 5TH
JUDICIAL CIRCUIT IN AND FOR
SUMTER COUNTY, FLORIDA

IN RE: THE MATTER OF

**RICKY NIEUWENHOVEN**,                    CASE NO.:
                                          FAMILY DIVISION
        Petitioner,

and

**NICOLE PISANI**,

        Respondent.

_____/

<u>**VERIFIED PETITION FOR RETURN OF MINOR CHILD TO PETITIONER**</u>

The Convention on the Civil Aspects of International Child
Abduction, done at the Hague on 25 Oct. 1980
International Child Abduction Remedies Act, 22 U.S.C. 9001 et seq.

This Petition is brought pursuant to the Convention on the Civil Aspects of International

Child Abduction, done at the Hague on October 25, 1980 ("Convention") and 22 U.S.C. §9001,

the International Child Abduction Remedies Act ("ICARA"). Petitioner, **RICKY**

**NIEUWENHOVEN** ("Petitioner"), seeks the return of the minor to their country of habitual

residence, and in support thereof states as follows:

<u>**I. INTRODUCTION**</u>

1.      Petitioner and Respondent, **NICOLE PISANI** ("Respondent"), have one (1) minor

child in common, to wit: Adelaide Francesca Nieuwenhoven ("Minor Child"), born on November

29, 2018, now age three (3) years.

2.      Petitioner files this Petition for Return of the Minor Child pursuant to the

Convention on the Civil Aspects of International Child Abduction, done at the Hague on October

25, 1980 ("Convention"), which went into effect on July 1, 1988, and 22 U.S.C. §9001, the International Child Abduction Remedies Act ("ICARA").

3.      The objects of the Convention are:

      a.      Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

      b.      Article 1(b): To ensure the rights of custody and of access under the law of one Contracting State are effectively respecting in the other Contracting States.

4.      Both Australia and the United States of America are signatories to the Convention.

## II. JURISDICTION

5.      This Court has jurisdiction pursuant to 22 U.S.C. §9003(a).

6.      A decision under the Convention is not a determination of custody of the Minor Child pursuant to Article 19 of the Convention and of 22 U.S.C. §9001(b)(4).

## III. STATUS OF PETITIONER

7.      Petitioner has a right of custody of the Minor Child, named herein, within the meaning of Articles 3 and 5 of the Convention in that the Petitioner is the natural father of the child.

8.      At the time of the wrongful removal and retention of the Minor Child, the parties were in an intact marriage and the Petitioner was actually exercising custody within the meaning of Articles 3 and 5 of the Convention.

9.      The Minor Child was habitually a resident in Australia within the meaning of Article 3 of the Convention immediately before the wrongful removal and retention of the Minor Child by the Respondent, **NICOLE PISANI** ("Respondent"). See Request for Return of Children Attached hereto as Exhibit "A."

## IV. REMOVAL AND RETENTION OF CHILD BY RESPONDENT

10.     On July 2, 2022, the Respondent traveled with the Minor Child to Sumter County, Florida during the child's school break and was required to return with the Minor Child to the child's habitual residence of Medindie, Australia on July 26, 2022.

11.     On July 24, 2022, the Respondent informed the Petitioner that she did not want to return to Australia and extended her trip until August 14, 2022. The Petitioner adamantly objected to the child remaining in the United States after July 26, 2022; however, after further discussions with the Respondent, the Petitioner agreed to allow the Respondent and minor child to extend their trip until August 14, 2022.

12.     Respondent did not return to Medindie, Australia with the Minor Child on August 14, 2022 and has wrongfully removed and retained the Minor Child from Australia within the meaning of Article 3 of the Convention and continues to wrongfully retain the child in the United States despite efforts on the part of the Petitioner to have the child returned.

13.     Respondent and Minor Child are presently in Sumter County, Florida.

14.     Following are the facts of the wrongful removal and retention of the child from Australia:

        a.      The parties were married on June 13, 2017 in Adelaide, Australia and remained residing in Australia;

        b.      The Minor Child was born in Australia in 2018;

        c.      The parties have remained in an intact marriage throughout the Minor Child's life, residing exclusively in Australia;

        d.      Pursuant to the laws of Australia, by way of their intact marriage, the Petitioner and Respondent both have rights of custody with regard to the Minor Child, which

include the right to determine her place of residence. There are no Court orders varying the parties' shared parental responsibility or limiting the Petitioner's responsibility and rights of custody with regard to the Minor Child;

e.      The Petitioner and Respondent share responsibility for the care of the Minor Child and meeting her day to day needs. The Petitioner was exercising his timesharing rights over the minor child freely and openly as customary during the parties' marriage;

f.      Prior to July 2, 2022, the parties had agreed that the Respondent would be able to travel with the Minor Child to Sumter County, Florida to visit with her family during the Minor Child's school break with a return date of July 26, 2022;

g.      On July 24, 2022, the Respondent informed the Petitioner that she did not want to return to Australia and that she unilaterally extended her trip until August 14, 2022. The Petitioner objected to the extended trip for the minor child and requested that the child be returned to Australia on July 26, 2022 as planned;

h.      After further discussions with the Respondent, the Petitioner agreed to the extension of the Respondent and minor child's trip until August 14, 2022. However, instead of returning with the Minor Child to Australia, the Respondent has wrongfully retained the Minor Child in Florida, notifying the Petitioner's family members that she does not intend to return to Australia with the Minor Child;

i.      As evidenced that the Respondent planned the Minor Child's removal and retention from Australia, shortly upon her arrival to Sumter County, Florida, the Respondent retained local Florida counsel;

j.      On August 26, 2022, the Petitioner filed with the Australian Central Authority an application for the return of the child under the Hauge Convention; and

k.      Since the date of the wrongful removal and retention, the Petitioner has not seen or spoken to his daughter.

15.     At the time of the wrongful removal, the Petitioner, Respondent, and Minor Child were all habitual residents of Australia.

16.     The Minor Child is a citizen and was permanently residing in Australia at the time of the wrongful removal and retention.

17.     By operation of Australian legislation, each of the parents of a minor child has parental responsibility and rights of custody unless and until a court order states otherwise. Pursuant to this shared parental responsibility decisions about the habitual residence of a minor child should be taken by both parties jointly. While the parties agreed that the Respondent would be able to travel with the Minor Child to Florida, she could not change the child's habitual residence without the consent of the Petitioner, who was exercising full parental rights at the time of the wrongful removal. Therefore, in accordance with Australian legislation the current retention of the Minor Child in the United States is wrongful because any change in the child's habitual residence should be decided between the parties or submitted to the competent Court in Australia.

18.     Pursuant to Australian legislation the Petitioner has rights of custody in relation to the Minor Child and these rights and custody have been breached within the meaning of Article 3 of the Convention. Therefore, the Petitioner demands the return of the minor child.

19.     The Australian Central Authority has requested assistance in returning the Minor Child from the National Center for Missing and Exploited Children, as the agent for the Department of State's Office of Children's Issues which is the Central Authority for the United States of America.

20.     Undersigned counsel has been retained at the request of the Petitioner to effectuate the return of Adelaide Francesca Nieuwenhoven.

### V. CUSTODY PROCEEDINGS IN THE UNITED STATES

21.     Although there are no known custody proceedings currently pending in the United States, the Courts of this State are requested to stay any other proceedings concerning the custody of the child as required by Article 16 of the Convention.

### VI. PERMANENT RELIEF REQUESTED

22.     Petitioner requests the following relief:

a.     The Minor Child be returned to the Petitioner immediately for the purpose of returning her to Australia;

b.     Order the Law Enforcement Officials of the State of Florida and the United States Federal Government assist the Petitioner in enforcing the Order; and

c.     The Petitioner requests that this Court award him all costs and fees incurred as required by Article 26 of the Convention and 22 U.S.C. §9007.

### VII. NOTICE OF HEARING

23.     Pursuant to 22 U.S.C. the Respondent shall be given notice pursuant to the provisions of the appropriate State and Federal Statutes.

**WHEREFORE**, Petitioner, **RICKY NIEUWENHOVEN**, requests that this Court grant all relief requested herein, award the Petitioner fees and costs for having to bring this litigation, and grant such other relief as may be deemed just and equitable.

I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this Petition and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

Dated this ___6th___ day of ___September___, 2022.

_____
**RICKY NIEUWENHOVEN**

STATE OF   Virginia                    )

                                       ) SS:

COUNTY OF   Isle of Wight              )

Sworn to or affirmed and signed before me by means of [ ] physical presence or [x] online presence on this ___6th___ day of ___September___, 2022, by **RICKY NIEUWENHOVEN.**

```
JENNIFER LEE WILLIAMSON
Electronic Notary Public
Commonwealth of Virginia
Registration No. 7880274
My Commission Expires Sep 30, 2024
```

This Notarization was conducted using online audio/video technology.

*Jennifer Lee Williamson*

My Commission Expires: 09/30/2024
NOTARY PUBLIC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was furnished to Respondent, **NICOLE PISANI**, via service of process.

LAW OFFICES OF KAREN E. LUNGARELLI, P.A.
Attorneys for Petitioner
777 Brickell Avenue, Suite 400
Miami, Florida 33131
Telephone: 305-998-3828
Email: karen@lungarellilaw.com
Secondary email: erica@lungarellilaw.com

BY:___/s/Karen E. Lungarelli___
    KAREN E. LUNGARELLI
    Florida Bar No. 86100
    ERICA A. ESTEVEZ
    Florida Bar No. 117700

# EXHIBIT "A"

**APPLICATION FOR THE RETURN OF A CHILD**

**APPLICATION IN ACCORDANCE WITH THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION FOR THE RETURN OF CHILDREN WRONGFULLY REMOVED FROM OR RETAINED OUTSIDE AUSTRALIA**

| REQUESTING CENTRAL AUTHORITY OR APPLICANT | REQUESTED AUTHORITY |
|---|---|
| **AUSTRALIA** | **UNITED STATES OF AMERICA** |

Concerns the following child:

**ADELAIDE FRANCESCA NIEUWENHOVEN** who will attain the age of 16 on 2̶8̶ 29 *Rh.* November 2034.

**I—IDENTITY OF THE CHILD**

| 1.1    Family name and other names | **NIEUWENHOVEN, ADELAIDE FRANCESCA** |
|---|---|
| Date and place of birth | 2̶8̶ November 2018, Australia  *29 th* |
| Habitual residence before removal or retention | South Australia, Australia |
| Passport or identity card number | Australian passport, number PA8402282 |
| Description and photo, if possible | See attachments |

**II—IDENTITY OF THE PARENTS**

| 2.1    Mother: | |
|---|---|
| Family name and first names | **PISANI, NICOLE FRANCESCA** |
| Date and place of birth | 19 April 1977, United States |
| Nationality | American |
| Occupation | Yoga Instructor |
| Habitual residence | South Australia, Australia |
| Passport or identity card number | United States passport, number 556183702 |

1

| 2.2    Father: | |
| --- | --- |
| Family name and first names | **NIEUWENHOVEN**, RICKY LEENDERT **HENDRICUS THOMAS** |
| Date and place of birth | 21 January 1973, Australia |
| Nationality | Australian |
| Occupation | Business Owner |
| Habitual residence | South Australia, Australia |
| Passport or identity card number | Australian passport, number PA3944185 |

| 2.3    Date and place of marriage | 10 June 2017, Australia |
| --- | --- |

## III—REQUESTING INDIVIDUAL OR INSTITUTION

| 3       Family name and first names | **NIUWENHOVEN**, RICKY LEENDERT |
| --- | --- |
| Nationality of individual applicant | Australian |
| Occupation of individual applicant | Business Owner |
| Address | 6 Elm Street, Medindie, South Australia, 5081, Australia |
| Phone | +61 412 518 343 |
| Email | rick@nieuvision.com.au |
| Passport or identity card number | Australian passport, number PA3944185 |
| Relation to the child | Father |
| Name and address of legal adviser, if any | Not applicable |

## IV—PLACE WHERE THE CHILD IS THOUGHT TO BE

| 4.1   Information concerning the person alleged to have removed or retained the child | |
| --- | --- |
| Family name and first names | **PISANI**, NICOLE FRANCESCA |
| Date and place of birth, if known | 19 April 1977, United States |

2

| | |
|---|---|
| Nationality, if known | American |
| Occupation | Yoga Instructor |
| Last known address | 6 Elm Street, Medindie, South Australia, 5081, Australia |
| Last known phone numbers | +61 402 179 352 |
| Last known email address | nicolepisani@yahoo.com |
| Passport or identity card number | United States passport, number 556183702 |
| Description and photo, if possible | See attachments |
| 4.2    Address of the child | 2561 Dunkirk Trail, The Villages, Florida, 32162, United States |
| 4.3    Other persons who might be able to supply additional information relating to the whereabouts of the child/ren | 1. Grandparents, **JOANNE PISANI** and **FRANK PISANI**. <br><br> Address: 2561 Dunkirk Trail, The Villages, Florida, 32162, United States <br><br> Phone Number: <br><br> +13 133 787 089 <br><br> 0011 352 502 2665 |

## V— TIME, PLACE, DATE AND CIRCUMSTANCES OF THE WRONGFUL REMOVAL OR RETENTION

1.  Around June 2022, the mother and I agreed that she would travel to the United States with Adelaide for a holiday and to spend time with the maternal family.

2.  On 27 June 2022 flight tickets were purchased for the mother and Adelaide to depart Australia on 2 July 2022 and return on 26 July 2022.

3.  On 24 July 2022 the mother messaged me to say that she wanted to remain in the United States.  I objected to her and Adelaide remaining in the US and I asked her to confirm her return with Adelaide as agreed on 26 July 2022.

4.  The mother then told me she changed her flight tickets to extend their stay to 14 August 2022 and I told her I disagreed with this.

5.  On 25 July 2022 I reminded the mother that she needed to return with Adelaide to Australia.  The mother told me she had hurt her toe and could not get on the flight.  The mother also alleged that I blocked her from using

3

the credit card.  I told the mother the card was blocked due to suspected fraudulent activity.

6.  Reluctantly I agreed for her to extend her stay in the US until 14 August 2022 by paying for their return flights with the changed dates.

7.  On 14 August 2022 the mother and Adelaide did not return to Australia.

8.  I currently have limited phone contact with Adelaide as dictated by the mother.  The mother is present during the calls and has behaved in an aggressive manner towards me in front of Adelaide.


## VI—FACTUAL OR LEGAL GROUNDS JUSTIFYING THE REQUEST

1.  I am the father of **ADELAIDE FRANCESCA NIEUWENHOVEN** ('Adelaide') born 28 November 2018.

2.  Adelaide is 3 years old and is therefore less than 16 years of age.

3.  The United States and Australia are both signatories to the Hague Convention on the Civil Aspects of International Child Abduction 1980 (the Hague Convention).

4.  Immediately before Adelaide's retention in the United States, Adelaide, the mother and I were all habitually resident in Australia.

5.  Under Australian law, I share rights of custody with respect to Adelaide with the mother by virtue of the *Family Law Act 1975,* sections 111B(4)(a) and 61C.

6.  These rights include rights relating to Adeliade's care, in particular the right to determine her place of residence (*Family Law (Child Abduction Convention) Regulations 1986,* regulation 4).

7.  There are no court orders made under the *Family Law Act 1975* removing my rights of custody.

8.  I was exercising my rights of custody at the time Adelaide was wrongfully retained in the United States.

9.  I have not consented to Adelaide being retained in the United States and I have not subsequently acquiesced to her remaining in the United States.

10. Adelaide's retention is wrongful under the Hague Convention and the Australian *Family Law (Child Abduction Convention) Regulations 1986.*

4

11. If Adelaide were to return to Australia, she would return to her former home and would not be exposed to any grave risk of physical or psychological harm, nor would her return place her in an intolerable situation.

12. I do not believe that Adelaide would object to returning to Australia and in any event, at her young age, she has not reached sufficient maturity for her wishes to determine the issue of where she is to live.

13. Adelaide's return to Australia would not be contrary to any fundamental principles of human rights in either the United States or Australia.

14. I seek the assistance of the Australian and the United States Central Authorities to secure the return of Adelaide to Australia and to prevent the mother taking her out of the United States to any other country other than Australia.

## VII—CIVIL PROCEEDINGS IN PROGRESS

1. There are no civil proceedings in progress.

## VIII—CHILD IS TO BE RETURNED TO:

| Family name and first names | NIUWENHOVEN, RICKY LEENDERT HENDRICUS THOMAS |
|---|---|
| Date and place of birth | 21 January 1973, Australia |
| Address | 6 Elm Street, Medindie, South Australia, 5081, Australia |
| Telephone number | +61 412 518 343 |
| Email | rick@nieuvision.com.au |
| Proposed arrangements for return of the child | I am willing to pay for the airfare for Adelaide to return to Australia. I am also willing to travel to the United States to accompany Adelaide back to Australia. |

## IX—OTHER REMARKS

Nil.

## X—LIST OF DOCUMENTS ATTACHED

1. Photos of Adelaide and the mother.

2. Affidavit of applicable law

3. Affidavit in support of this Application.

5

I authorise the requested Central Authority and its agents to act on my behalf and to do all things reasonable and necessary in connection with this application.

Date: ...... 26/8/22 ..............................

Place:..... Nailsworth . ....................

Signature and/or stamp of the requesting Central Authority applicant

.............................................................

**RICKY NIEUWENHOVEN**

PHOTO OF CHILD ADELAIDE FRANCESCA <u>NIEUWENHOVEN</u>



PHOTO OF MOTHER NICOLE <u>PISANI</u>



Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

7

**COMMONWEALTH OF AUSTRALIA**

**Family Law (Child Abduction Convention) Regulations 1986**

**Affidavit in Support of Application for Return of a Child in
Accordance with the Hague Convention on the Civil Aspects of
International Child Abduction 1980 (the Convention)**

I, **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**, Business Owner, of 6 Elm Street, Medindie, South Australia, Australia, solemnly and sincerely affirm as follows:

1. I make this affidavit in support of my Application to obtain the return of my child, **ADELAIDE FRANCESCA NIEUWENHOVEN**, ('Adelaide') from the United States, a signatory state to the Convention.

2. Save where otherwise indicated, I make this affidavit from my own knowledge. Where I depose to matters from information or belief, I believe those matters to be true and correct.

3. Where I have quoted conversations I have done so to the best of my recollection.

4. Adelaide was born on 29 November 2018 in Australia. Adelaide is 3 years old and is therefore less than 16 years of age. Annexed to this affidavit and marked with the letters "**RN-01**" is a copy of Adelaide's birth certificate.

5. Adelaide is an Australian national and holds and Australian passport. Annexed to this affidavit and marked with the letters "**RN-02**" is a copy of Adelaide's passport.

6. Adelaide had resided in Australia her whole life until her mother, **NICOLE FRANCESCA PISANI** ('the mother'), wrongfully retained her in the United States.

7. As Adelaide's father, I have parental responsibility and hence rights of custody for her under Australian law. There are no orders of the Australian courts removing or derogating from those rights.

8. I was exercising my rights of custody at the time the mother wrongfully retained Adelaide from Australia.

9. My Application is filed within 12 months of Adelaide's retention in the United States by the mother.

10. I have been attempting to get the mother to return Adelaide to Australia since 24 July 2022, but these efforts have been unsuccessful.

11. Adelaide and the mother were due to return to Australia from their holiday in the United States on 26 July 2022. Shortly before the scheduled return date, the mother changed the flights to return on 14 August 2022. The mother did not return with Adelaide on this date. I believe that the date of wrongful retention is 14 August 2022.

Signature of Deponent

Signature of Witness
J.P. No. 30143
A Justice of the Peace for
South Australia

1

**Background**

12. I was born on 21 January 1973 in Australia. I am currently 49 years old. I am an Australian national, habitually resident in Australia and hold an Australian passport. My Australian passport number is PA3944185. Annexed to this affidavit and marked with the letters "**RN-03**" is a copy of my passport.

13. The mother was born on 19 April 1977 in the United States. She is currently 45 years old. She is a United States national, habitually resident in Australia with permanent residency here. She holds a United States passport. Her passport number is 556183702. Annexed to this affidavit and marked with the letters "**RN-04**" is a copy of the mother's passport.

14. The mother and I commenced our relationship in the United States in 2017 and commenced cohabitation in Australia in February 2017.

15. The mother came to Australia on 8 February 2017 and has lived in Australia since then.

16. The mother and I married on 10 June 2017 in Australia. Annexed to this affidavit and marked with the letters "**RN-05**" is a copy of our marriage certificate.

17. Adelaide was born on 29 November 2018 in Australia. See annexure "**RN-01**" of this affidavit, which is a copy of Adelaide's birth certificate.

18. The mother and I remain married and have not made any plans to separate at this stage.

19. Adelaide has had all of her education in Australia.

**Habitual Residence**

20. At the date of retention, the mother, Adelaide and I were habitually resident in Australia.

21. I was born in Australia and have lived in Australia all of my life.

22. The mother was born in the United States and relocated to Australia in 2017. The mother is a permanent resident in Australia.

23. Adelaide was born in Australia and has lived her whole life in Australia.

24. I am the owner of my business, Nieuvision Finance.

25. I have an Australian Medicare Card, Australian bank accounts and an Australian driver's licence.

26. The mother is enrolled in Medicare so that she can access health care entitlements in Australia. After Adelaide was born, she was also enrolled in Medicare. Annexed to this affidavit and marked with the letters "**RN-06**" is a true copy the Medicare card listing both the mother and Adelaide.

Signature of Deponent

26/8/2022

**Rosa Falco**
Signature of Witness   J.P. No. 30143
A Justice of the Peace for
South Australia

27. The mother also has an Australian driver's licence and Australian bank accounts.

28. While the mother was living in Australia, she worked as a Yoga Instructor with Nextgen gym, One Degree Yoga.

29. As I was born in Australia, most of my family resides here. This includes my father and my four sisters. I also have three adult children from a previous relationship and two grandchildren. I also have a close group of friends in Australia, as well as many clients of my business Nieuvision Finance whom I spend time with socially. I am a member of the non-profit Entrepreneurs Organisation. I own two properties located at 6 Elm Street, Medindie, South Australia and 19 Main North Road, Medindie, South Australia.

30. The mother has made many friends in Australia. Through her career as a Yoga Instructor, she has become part of the South Australian yoga community. The mother has also connected with other mothers from Adelaide's Early Learning Centre ("ELC"). The mother is a member of a women's entrepreneur group associated with the Entrepreneurs Organisation. She is also a co-owner of a car storage warehouse with me.

31. In Australia, Adelaide has three older step-brothers and sisters who are my children from a previous relationship. Adelaide loves spending time with her siblings. She also has my father (the paternal grandfather) and three aunties (the paternal aunties). Adelaide has some close friends from ELC who she regularly spends time with, including **SABINHA**, **MADDY** and **MYIA**. Adelaide enjoys attending ELC three and a half days per week and enjoys being social with her classmates. Outside of ELC, Adelaide also takes ballet lessons.

32. Adelaide receives care from our nanny, **SHIRLEY SHALLEN** who assists with housework and Adelaide's care including activities like taking her to school and to the playground.

33. Other people who assist with Adelaide's care such as babysitting and general care are as follows:

   a) **JESSICA CRANNAFORD**, step sister;
   b) **TYLOR CRANNAFORD**, step brother ;
   c) **BLAKE CRANNAFORD**, step brother;
   d) **LEN NIEUWENHOVEN**, paternal grandfather;
   e) **STACEY HUNTER**, employee of Nieuvision and baby sitter;
   f) **DEBBIE WEST**, aunt;
   g) **MICHELLE PRIDHAM**, friend; and
   h) **SAM ELF**, neighbour and friend

34. Adelaide attended the preschool at the Wilderness Girls School from February 2022 until 2 July 2022 when she travelled with the mother to the United States. Adelaide is still enrolled at the Wilderness Girls School and was due to begin term 3 in the week of 25 July 2022. Adelaide also

Signature of Deponent

26/8/2022

Signature of Witness

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

has a place secured to attend primary school at the Wilderness Girls School once she is 5 years old.   Annexed to this affidavit and marked with the letters "**RN-07**" is a true copy of the latest invoices for Term 2 dated 19 May 2022 and Term 3 dated 5 August 2022.

## Rights of custody and exercising rights of custody

35. I acknowledge that I am the father of Adelaide. I am listed as the father on Adelaide's birth certificate. See annexure "**RN-01**" of this affidavit, which is a copy of Adelaide's birth certificate.

36. I am advised and verily believe that under Australian law I have rights of custody with respect to Adelaide.

37. Under Australian law, I share parental responsibility and rights of custody for Adelaide with her mother by virtue of the *Family Law Act 1975,* sections 111B(4)(a) and 61C.

38. These rights include rights relating to Adelaide's care, in particular the right to determine her place of residence (*Family Law (Child Abduction Convention) Regulations 1986,* regulation 4).

39. The mother and I have not agreed to vary our shared parental responsibility of Adelaide, or to change the current habitual residence of Adelaide from Australia.

40. There are not any court orders varying the mother's and my shared parental responsibility for Adelaide.

41. Prior to Adelaide's removal to the United States, I was exercising my rights of custody with regard to her.

42. I am the primary income earner for the family and would also share a large portion of care for Adelaide. Our nanny also provided a lot of care to Adelaide.

43. In the mornings, Adelaide would wake up and come to sit on my lap. I would make her some breakfast and also make lunch for her to take to ELC, although sometimes the mother will have prepared this the night before. On most days, I would take Adelaide to ELC and walk her to her classroom. At least half of the week I would collect Adelaide from ELC, or our nanny would collect her and bring her home to where I would be. If Adelaide had activities planned, I would take her to her friend's houses and ballet or swimming lessons. If she did not have activities to get to, we would spend the afternoon playing games and puzzles, watch TV together or play on the playground. If I had chores to complete, Adelaide would happily follow me around while I do them. I would often make dinner for Adelaide, then get her ready for bed and read her a story until she fell asleep.

44. I would have been exercising my rights of custody with respect to Adelaide now if the mother had not wrongfully retained Adelaide in the United States on 14 August 2022.

Signature of Deponent

Signature of Witness

26/8/2022

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

**Circumstances of Adelaide's retention in the United States**

45. In June 2022, the mother and I discussed travelling to the United States. The mother wanted to take Adelaide to visit her family in Florida. I was very busy at work so was not able to go with the mother and Adelaide. Our nanny was also overseas at the time so she could not go on the trip either. The mother and I agreed that she and Adelaide would go to the United States for a three-week trip, returning in time for Adelaide to return to ELC in late July 2022.

46. On 27 June 2022, I bought return airline tickets for the mother and Adelaide to travel to the United States to visit the maternal side of the family in Florida. The mother and Adelaide were to fly out of Australia on 2 July 2022 and return on 26 July 2022. Annexed to this affidavit and marked with the letters "**RN-08**" is a copy of the mother and Adelaide's travel itinerary with travel dates between 2 July 2022 to 26 July 2022.

47. On 2 July 2022 Adelaide left Australia with the mother to travel to the United States on the understanding and agreement that Adelaide would return on 26 July 2022.

48. On 24 July 2022, the mother messaged me telling me that she wanted to stay in the United States with Adelaide by saying, "*I want us all to move back*" in reference to moving back to the United States. We exchanged several text messages where I tried to reason with the mother and told her I did not agree to Adelaide remaining in the United States. I specifically asked the mother to confirm that she was returning to Australia with Adelaide to which she responded, *"Yes. I called [the travel agent] & had the flights changed to August 14 to give us two more weeks".* I responded by saying this extension had not been discussed with me and told the mother that if she wanted to stay longer that was fine, but Adelaide needed to return to Australia as planned on the 26 July 2022. Annexed herein and marked with the letters "**RN-09**" is a copy of the messages between the mother and me dated 24 July 2022

49. On 25 July 2022, I emailed the mother to remind her that Adelaide was due to return to Australia the following day, on 26 July 2022, as per our agreement. I told the mother that I never agreed to any extension of the trip, and I did not agree to her keeping Adelaide in the United States any longer. I told the mother that if she wanted to stay longer with her family in the United States she was more than welcome to do so but Adelaide needed to return to Australia immediately. If the mother did wish to stay longer, I told her I was happy to fly to the United States to accompany Adelaide back to Australia. Annexed herein and marked with the letters "**RN-10**" is a copy of the email I sent to the mother dated 25 July 2022.

50. Adelaide did not return to Australia on 26 July 2022 as initially booked and agreed.

51. On 26 July 2022, the mother responded via email to my 25 July 2022 email. The mother told me that she was unable to return to Australia with Adelaide as planned because she had broken her toe whilst in the United States. The mother also made various allegations regarding me blocking

Signature of Deponent

Signature of Witness

26/8/2022

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

her American Express card and stated that I threatened her. Annexed herein and marked with the letters "**RN-11**" is a copy of the mother's email dated 26 July 2022

52. On 26 July 2022, I replied to the mother's email. I told her that the American Express cards had just been cancelled as I had received information that they had been used fraudulently, and new ones were sent out. I arranged payment for the new flights for the mother and Adelaide to return on 14 August 2022 because I believed that would secure their ultimate return despite a delay of several weeks. Annexed herein and marked with the letters "**RN-12**" is a copy of my email response to the mother dated 26 July 2022.

53. I initially have had limited contact with Adelaide since she left Australia which has now deteriorated due to the mother's actions. The time difference has made it quite difficult to work out a routine with the mother. I tried to establish a regular schedule so that I can speak to Adelaide at least three times per week. At first, the mother agreed to a schedule for me to FaceTime with Adelaide three nights per week. However, my current contacted is reduced to once to twice a week being dictated by the mother's schedule. Annexed to this affidavit and marked with the letters "**RN-13**" is a true copy of my text message to the mother requesting contact with Adelaide as early as 25 July 2022 when the mother was trying to extend their stay without my consent.

54. On 16 August 2022, the mother called me to tell me that she would no longer be taking my calls. In an effort to re-establish communication with the mother and therefore with Adelaide, I arranged to meet with the mother via a marriage counsellor (a psychologist) who we met on 18 August 2022. We were unable to resolve our differences.

55. I have constantly requested that the mother return Adelaide to Australia, but she continues to ignore my requests.

56. My communication with Adelaide has become increasingly difficult to maintain. For example, on 6 August 2022 I spoke to Adelaide, but when I tried to call the following Tuesday 9 August 2022, my call was not taken. The mother called me on Thursday 11 August 2022 when I had told her previously that I was not available that time due to work commitments. I called on Friday 12 August 2022 and the mother told me that because it was not a scheduled call day I could not speak with Adelaide. I called again on Saturday 13 August 2022 and there was no answer.

57. The mother did not return Adelaide to Australia on 14 August 2022, which was day of the rescheduled flights after the short extension of time she arranged without consulting with me.

58. The mother continues to retain Adelaide in the United States without my consent.

**Circumstances in Australia if a return is ordered**

Signature of Deponent

26/8/2022

Signature of Witness

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

59. There is no grave risk that the return of Adelaide to Australia will expose her to physical or psychological harm or otherwise place her in an intolerable situation.

60. I believe that I have provided Adelaide with a secure and loving environment. On Adelaide's return to Australia, she will return to our home and be surrounded by her family and friends in South Australia, Australia.

61. If the mother decides to return to Australia with Adelaide and decides that she no longer wishes to live with me, I propose that I assist the mother to find appropriate accommodation whilst she decides where she would like to live: whether that be in Australia or the United States. I would continue to provide for Adelaide and cover all of her expenses, including for her food, clothes, education, extra-curricular activities and any other essentials. I propose that the mother and I enter into a 50-50 shared care arrangement for Adelaide.

62. I do not believe that there are any financial circumstances that would prevent the mother from returning to Australia. I am able to support the mother financially by paying for her interim accommodation in Australia and continuing to pay her a $2,400 fortnightly distribution of profits from Nieuvision Finance. I am able to provide the mother with additional funds that she may require to support herself in the transitional period and will pay for 100% of Adelaide's expenses.

63. Both the mother and Adelaide are still eligible for Medicare entitlements, such as free public hospital treatment, free or subsidised treatment from general practitioners and specialists and subsidised pharmaceuticals. Annexed to this affidavit and marked with the letters "**RN-13**" is a copy of an information sheet produced by the Australian Government relating to Medicare entitlements.

64. I earn income running my own business. Under Australian law if Adelaide lives with the mother, I would be required to pay child support to the mother. I am prepared to fulfil my financial obligations as a parent and support Adelaide.

65. I am aware that the Australian government provides financial benefits to separated parents. Annexed to this affidavit and marked with the letter "**RN-14**" is a printout from the Australian Department of Human Services website, which sets out the benefits available and brief eligibility requirements.

66. I am aware that a parent returning to Australia in these circumstances is entitled to assistance from various agencies in Australia. Annexed to this affidavit and marked with the letter "**RN-15**" is a copy of an information sheet produced by the Australian Central Authority, which sets out assistance, which is available to a returning parent in Australia.

67. There has been no family violence in the mother's and my relationship. I have never neglected nor caused harm to Adelaide or the mother.

26/8/2022

Signature of Deponent

Signature of Witness

Rosa Falco
J.P. No. 30143
Justice of the Peace for
South Australia

68. If the court orders that Adelaide return to Australia and the mother chooses not to return to Australia, I am able to care for Adelaide on a full-time basis. As I own my own business, I can be flexible with my work hours to ensure I am home to spend time with Adelaide, take her to school and any extra-curricular activities. We also have a nanny who cares for Adelaide 20 hours per week. She has been doing so since Adelaide was born and is like a grandmother to Adelaide. She would continue to care for Adelaide while I work by taking Adelaide to and from school, cooking for her and taking her to any activities that Adelaide is involved in. I would ensure that Adelaide maintains a relationship with her mother through phone and video calls and arrange visits between the United States and Australia.

**Child's return to Australia**

69. I am prepared to pay the airfares for Adelaide to return to Australia, and I am willing to travel to the United States to accompany Adelaide back to Australia.

70. I am also willing to continue to support Adelaide, financially, physically and emotionally after she returns to Australia.

71. As I have a right of custody, which I was exercising before Adelaide left Australia, and I have not consented nor acquiesced to the retention of Adelaide in the United States, I seek her return to Australia.

72. Returning Adelaide to their home in Australia would in no way pose a grave risk to her physical or psychological health or place her in an intolerable situation and would not be contrary to any fundamental principles of human rights.

73. I do not believe that Adelaide would have any relevant objections to returning to Australia and given her very young age she has not reached a sufficient degree of maturity where it would be appropriate to take account of her views. When I speak to Adelaide on the phone, she repeatedly tells me she wants to come home.  Adelaide has also said to me she misses her newborn baby cousin **MILES** and her school friends, especially her friend **AVA**.

74. Most recently when I spoke to Adelaide on 18 August 2022, it was heartbreaking to see her grab her suitcase and tell me she wants to come home.  Adelaide told me she missed me, her bed and her nanny.

75. I have concerns for Adelaide's welfare. She is currently living in a retirement village with minimal access to other children. When I speak with her, she continually asks to come home and that she misses me. She also asked if I could come to her soon as she wants a cuddle. During the calls, the mother is present and often speaks to me in an aggressive and argumentative manner. For example, on 2 August 2022 Adelaide told me she missed me and wanted me to stay on the phone to watch her fall asleep.  I was happy to do that but the mother insisted I leave, escalating

Signature of Deponent

26/8/2022

Signature of Witness **Rosa Falco**
J.P. No. 30143
A Justice of the Peace for
South Australia

her voice and Adelaide started screaming in distress, asking for me, at which point the mother terminated the call.

76. On 9 August 2022, during a call with Adelaide I asked if I was speaking with her in a private space, the maternal grandmother **JOANNE PISANI** yelled at me, in front of Adelaide, "*It's my house you fucking cunt!*". She further added, "*I am going to KILL you because that's what we do in our family and I am going to rip your heart out!*".   Adelaide started screaming for me.

77. I want Adelaide to be returned to Australia as soon as possible, in order to minimise the disruption to her life, the negative impact on her development and the deterioration in my relationship with her.

78. I seek the assistance of the Australian Central Authority; the Central Authority of the United States and the courts to secure Adelaide's return to her habitual residence in Australia.

**Affirmed** at _Nailsworth_                                    )

In the State of **South Australia**, Australia        )            ..............................................

This _26_ day of **August 2022**                        )            Signature of Deponent

Before me:

..............................................

Signature of Witness

Name of Witness:..............................................

Qualification of Witness:..............................................

_26/8/2022_

**Rosa Falco**
J.P. No. 30143
A Justice of the Peace for
South Australia

161 Main North Road
Nailsworth SA 5083

9

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-01"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this _____ day of August 2022.

Before me:

.............................................

Signature of witness

**Rosa Falco**
..........................J.P. No. 30143.............
A Justice of the Peace for
Name and qualification of witness

10

## Births, Deaths and Marriages Registration Act 1996

**"RN-01"**

### SOUTH AUSTRALIA

## BIRTH CERTIFICATE

| CHILD | |
|---|---|
| Surname | NIEUWENHOVEN |
| Given Names | ADELAIDE FRANCESCA |
| Sex or Gender Identity | FEMALE |
| Date of Birth | 29/11/2018 |
| Place of Birth | WOMEN'S AND CHILDREN'S HOSPITAL, NORTH ADELAIDE |

| MOTHER | |
|---|---|
| Surname | PISANI |
| Maiden Surname | PISANI |
| Given Names | NICOLE FRANCESCA |
| Date of Birth | 19/04/1977 |
| Place of Birth | CHICAGO, ILLINOIS, UNITED STATES OF AMERICA |
| Occupation | YOGA THERAPIST |
| Address | 70 ROWE AVE |
| | NORTHFIELD SA 5085 |

| FATHER | |
|---|---|
| Surname | NIEUWENHOVEN |
| Given Names | RICKY LEENDERT HENDRICUS |
| Date of Birth | 21/01/1973 |
| Place of Birth | PROSPECT, SOUTH AUSTRALIA |
| Occupation | CEO |
| Address | 70 ROWE AVE |
| | NORTHFIELD SA 5085 |

| MARRIAGE OF PARENTS | |
|---|---|
| Date of Marriage | 10/06/2017 |
| Place of Marriage | NAILSWORTH, SOUTH AUSTRALIA |

| PREVIOUS CHILDREN OF PARENTS | |
|---|---|
| Given Names (sex or gender identity, date of birth) | |

| INFORMANTS | | |
|---|---|---|
| Name | N.F. PISANI | R.L.H. NIEUWENHOVEN |
| Relationship to Child | MOTHER | FATHER |

| REGISTRATION | |
|---|---|
| Registration Number | 20634199 |
| Date | 14/01/2019 |



BIRTHS, DEATHS AND MARRIAGES REGISTRATION OFFICE, ADELAIDE
I hereby certify that the above particulars are contained in an entry
in the Register kept in this Office in the State of South Australia.

Given under my hand and seal this **24th day of January, 2019**

REGISTRAR

2278813

11

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

**ANNEXURE SHEET**

This is the annexure marked with the letters **"RN-02"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this _26_ day of August 2022.

Before me

..................................................

Signature of witness

**Rosa Falco**
........................... J.P. No. 30143
A Justice of the Peace for
Name and qualification of witness

12

**"RN-02"**



THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-03"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this _26_ day of August 2022.

Before me:

...................................................

Signature of witness
R. Julca Falco
J.P. No. 30143
...................A Justice of the Peace for
South Australia
Name and qualification of witness

14

**RN-03**



THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

**ANNEXURE SHEET**

This is the annexure marked with the letters **"RN-04"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this 26 day of August 2022.

Before me:

Signature of witness
**Rosa Falco**
J.P. No. 30143
A Justice of the Peace for
Name and qualification of witness

**"RN-04"**



THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-05"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this 26 day of August 2022.

Before me:

.........................................

Signature of witness
Rosa Fraiss
J.P. No. 30143
.........A Justice of the Peace for..
South Australia

Name and qualification of witness

18

COMMONWEALTH OF AUSTRALIA **"RN-05"**

*Marriage Act 1961*

# OFFICIAL CERTIFICATE OF MARRIAGE

*paragraph 50(1)(b) Marriage Act 1961 (Cth)*

Marriage was solemnised in the State of South Australia

between the parties details of whom are given below

On the **13th day of June, 2017**

At **169 Main North Road, Nailsworth**

According to **Civil Rites**

| Detail | Bridegroom | Bride |
|---|---|---|
| Surname | NIEUWENHOVEN | PISANI |
| Other names | Ricky Leendert Hendricus Thomas | Nicole Francesca |
| Usual occupation | Accountant | Yoga Therapist |
| Usual place of residence | 18 Murray Street NORTH ADELAIDE SA 5006 | 18 Murray Street NORTH ADELAIDE SA 5006 |
| Conjugal status | Divorced | Never Validly Married |
| Birthplace | Prospect SOUTH AUSTRALIA | Chicago UNITED STATES OF AMERICA |
| Date of birth | 21 January 1973 | 19 April 1977 |
| Father's name in full | NIEUWENHOVEN Leendert | PISANI Francesco Arturo |
| Mother's maiden name in full | BOTTINGA Petronella Pietje | BLITZ Joann Clara |

Witnesses to marriage **Sheila COTTON** **Leendert NIEUWENHOVEN**

On the date and at the place specified above, **Christopher Steele** duly solemnised marriage in accordance with the provisions of the *Marriage Act 1961* between the parties specified above.

Registration number **20204058**

Date registered **19 June 2017**



**BIRTHS, DEATHS AND MARRIAGES REGISTRATION OFFICE, ADELAIDE**
I hereby certify that the above particulars are contained in an entry in the Register kept in this Office in the State of South Australia

Given under my hand and seal this **6th day of December, 2017**



**REGISTRAR**

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

**ANNEXURE SHEET**

This is the annexure marked with the letters **"RN-06"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this 26 day of August 2022.

Before me.

..................................

Signature of witness

**Rosa Fales**
J.P. No. 30143
A Justice of the Peace for
South Australia

Name and qualification of witness

20

**"RN-06"**



THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-07"** referred to in the Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before me this _26_ day of August 2022.

Before me:

.................................................
Signature of witness
Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia
Name and qualification of witness

22



**"RN-07"**

Wilderness School
ABN 97007529124
CRICOS Provider No: 00375B
Phone: 08 8344 6688
30 Hawkers Rd
Medindie SA 5081  SA 5081

TAX INVOICE / STATEMENT

Page 1 of 2

Mr R Nieuwenhoven and Ms N Pisani
6 Elm St
MEDINDIE SA 5081

**Account Code:** 31422/1
**Statement Date:** 19/05/2022
**BPay Reference:** 31422014
**Statement Due Date:** 02/06/2022

| | OPENING BALANCE |
|---|---|
| | **$3,295.00** |

For Tuition of: Addy Nieuwenhoven (E-2)

| DATE | ITEM DESCRIPTION | AMOUNT |
|---|---|---|
| | **Payments** | |
| 28/03/2022 | Receipt | -$3,295.00 |
| | **Payments Received Sub Total** | **-$3,295.00** |
| | **Addy Nieuwenhoven (31424)  - Yr-2** | |
| 03/05/2022 | Miscellaneous ELC Charge - ELC Enrolment Deposit Refunded (Addy) | -$100.00 |
| 18/05/2022 | Mamie's (Day sessions) - Mamies Full Day - Monday 8 Sessions Term 2 2022 | $584.00 |
| 18/05/2022 | Music - ELC - Music - Wednesday 9 Sessions Term 2 2022 | $135.00 |
| 18/05/2022 | Mamie's (Day sessions) - Mamies Full Day - Tuesday 9 Sessions Term 2 2022 | $657.00 |
| 18/05/2022 | Mamie's (AM sessions) - Mamies Half Day - Wednesday 9 Sessions Term 2 2022 | $513.00 |
| 18/05/2022 | Yoga - ELC - Yoga - Tuesday 9 Sessions Term 2 2022 | $81.00 |
| 18/05/2022 | Mamie's (Day sessions) - Mamies Full Day - Thursday 9 Sessions Term 2 2022 | $657.00 |
| 18/05/2022 | Little Sports - ELC - Littlesports - Monday 8 Sessions Term 2 2022 | $120.00 |
| | **Sub Total for Addy** | **$2,647.00** |
| | **Account Balance** | **$2,647.00** |
| | **Including Total GST of** | **$0.00** |

Payment is due by 2nd June 2022

---

✂  *Please detach this slip and return it with your payment and payment details completed.*

**Mr R Nieuwenhoven and Ms N Pisani**

**Account Code:** 31422/1
**Statement Date:** 19/05/2022
**Statement Due Date:** 02/06/2022

| AMOUNT DUE |
|---|
| **$2,647.00** |
| *Includes total GST  $0.00* |

**Payment Options**

| Payments by Credit Card | MasterCard ☐ | Visa ☐ | Card Number: | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name on Card: | | | | | | | | | | | | | | | | | | |
| Signature: | | | Amount Paid: | | | | Exp Date  /  | | | | | | | | | | | |

**Payments by Direct Credit**

Bank: ANZ      BSB: 015010      Account: 401736393      Reference: 31422/1 - Pisani

**Payments by Cheque**    Please detach this slip and mail it together with cheque.

**Payments by BPay**      Biller Code: **646414**

**Payments by Swift**     REF: **31422014**
Code: ANZBAU3M

Telephone and Internet Banking BPay
Contact your bank or financial institution to make this payment
from your cheque, savings or transaction account. More info:
www.bpay.com.au

23

Continued ...

## TERMS AND CONDITIONS

Fees and charges will be invoiced on 1 February, 1 May and 1 August. Fees are due and payable 14 days after invoice date. A late payment fee of $50 applies. Any account remaining unpaid may incur interest at a rate to be notified by the School.

A student shall not be withdrawn from Wilderness School except at the end of the term after the offeree has given notice in writing of withdrawal before the commencement of the term. Failing such notice, the applicable tuition fees for a full term will become payable.

Boarding fees are payable for the whole year unless a student is accepted for a lesser period. Liability for the year's boarding fee is unaltered by withdrawal during the year.

Any legal costs or expenses incurred in the collection of overdue accounts will be charged to the account.

The School reserves the right in its absolute discretion to expel or suspend a student for disciplinary purpose or for non-payment of fees or other charges, without a refund of fees.

The Building Fund donation is needed to service existing School Building Loans and to maintain the School's Building Programme. The voluntary donation is an allowable deduction for income tax purposes.

Receipts will not be forwarded unless requested [Building Fund donations excepted].

On the first account each year, parents are invited to join or continue membership of the Parent's and Friend's Association for the year.

## EARLY LEARNING CENTRE FEES

Early Learning Centre fees are billed in advance at the commencement of each term.

The fees are structured on the annual running costs of the Early Learning Centre and no refunds or credits are given for "short" weeks due to public holidays or absences. Early Learning Centre fees are due in full 14 days from invoivce date.

## PAYMENT OPTIONS



**Direct Debit**

Annual School fees [R - Yr 12] may be settled in ten monthly instalments by way of direct debit. A $10/ month administrative charge applies. Complete the Direct Debit Request and return to the Business Office.



**BPAY**

Please call your bank to make a payment from your nominated savings or cheque account. You will need to enter the Biller Code 646414 and your reference number on the front of this account.



**Credit Card**

The School accepts payment by Visa and Mastercard. A 1 % surcharge applies to each transaction. Please complete the section below and return to the Accounts Receivable Dept. of the School. The ten monthly instalment plan [R - Yr 12] is available to credit card payments. Please complete the Credit Card Authority Request and return to the Business Office.



**Cheque**

Cheques should be made payable to Wilderness School and crossed Not Negotiable. Please return the remittance advice together with your cheque to Accounts Receivable, Wilderness School, PO Box 93, Walkerville SA 5081



**By Phone**

Phone 8344 6688 between the hours of 8.30am and 4.00pm and advise that you wish to make payment of your account by credit card. The School accepts Visa or Mastercard. A 1 % surcharge applies.



**EFTPOS**

EFTPOS facilities are available in the School's Front Office between the hours of 8.30am and 4.00pm. Present this account when you make payment.



**In Person**

Please present this account intact at the School's Front Office with your payment. Payments in person may be made via cheque, EFTPOS or credit card between office hours of 8.30am and 4.00pm.



WILDERNESS
SCHOOL

Wilderness School
ABN 97007529124
CRICOS Provider No: 00375B
Phone: 08 8344 6688
30 Hawkers Rd
Medindie SA 5081   SA 5081

TAX INVOICE / STATEMENT

Page 1 of 2

Mr R Nieuwenhoven and Ms N Pisani
6 Elm St
MEDINDIE SA 5081

**Account Code:** 31422/1
**Statement Date:** 05/08/2022
**BPay Reference:** 31422014
**Statement Due Date:** 19/08/2022

For Tuition of: Addy Nieuwenhoven (E-2)

| | OPENING BALANCE |
|---|---|
| | **$2,647.00** |

| DATE | ITEM DESCRIPTION | | AMOUNT |
|---|---|---|---|
| | **Payments** | | |
| 03/06/2022 | Receipt | | -$2,647.00 |
| | | **Payments Received Sub Total** | **-$2,647.00** |
| | **Addy Nieuwenhoven (31424)  - Yr-2** | | |
| 01/08/2022 | Mamie's (Day sessions) - Mamies Full Day - Monday 9 Term 3 | | $657.00 |
| 01/08/2022 | Music - ELC - Music - Wednesday 10 Term 3 | | $150.00 |
| 01/08/2022 | Mamie's (Day sessions) - Mamies Full Day - Tuesday 9 Term 3 | | $657.00 |
| 01/08/2022 | Mamie's (AM sessions) - Mamies Half Day - Wednesday 10 Term 3 | | $570.00 |
| 01/08/2022 | Yoga - ELC - Yoga - Tuesday 9 Term 3 | | $81.00 |
| 01/08/2022 | Mamie's (Day sessions) - Mamies Full Day - Thursday 10 Term 3 | | $730.00 |
| 01/08/2022 | Little Sports - ELC - Littlesports - Monday 9 Term 3 | | $135.00 |
| | | **Sub Total for Addy** | **$2,980.00** |
| | | **Account Balance** | **$2,980.00** |
| | | **Including Total GST of** | **$0.00** |

Payment is due by 19th August 2022.

---

✂  *Please detach this slip and return it with your payment and payment details completed.*

**Mr R Nieuwenhoven and Ms N Pisani**

**Account Code:** 31422/1
**Statement Date:** 05/08/2022
**Statement Due Date:** 19/08/2022

**AMOUNT DUE**
**$2,980.00**
*Includes total GST  $0.00*

**Payment Options**

| Payments by Credit Card | MasterCard ☐ | Visa ☐ | |
|---|---|---|---|
| Name on Card: | | Card Number: | |

| Signature: | | Amount Paid: | | Exp Date       /       | CCV |
|---|---|---|---|---|---|

**Payments by Direct Credit**

Bank: ANZ      BSB: 015010      Account: 401736393      Reference: 31422/1 - Pisani

**Payments by Cheque**   Please detach this slip and mail it together with cheque.

**Payments by BPay**

**Payments by Swift**
Code: ANZBAU3M

**B PAY**   **Biller Code: 646414**
**REF: 31422014**

Telephone and Internet Banking BPay
Contact your bank or financial institution to make this payment
from your cheque, savings or transaction account. More info:
www.bpay.com.au

25

## TERMS AND CONDITIONS

Fees and charges will be invoiced on 1 February, 1 May and 1 August. Fees are due and payable 14 days after invoice date. A late payment fee of $50 applies. Any account remaining unpaid may incur interest at a rate to be notified by the School.

A student shall not be withdrawn from Wilderness School except at the end of the term after the offeree has given notice in writing of withdrawal before the commencement of the term. Failing such notice, the applicable tuition fees for a full term will become payable.

Boarding fees are payable for the whole year unless a student is accepted for a lesser period. Liability for the year's boarding fee is unaltered by withdrawal during the year.

Any legal costs or expenses incurred in the collection of overdue accounts will be charged to the account.

The School reserves the right in its absolute discretion to expel or suspend a student for disciplinary purpose or for non-payment of fees or other charges, without a refund of fees.

The Building Fund donation is needed to service existing School Building Loans and to maintain the School's Building Programme. The voluntary donation is an allowable deduction for income tax purposes.

Receipts will not be forwarded unless requested [Building Fund donations excepted].

On the first account each year, parents are invited to join or continue membership of the Parent's and Friend's Association for the year.

## EARLY LEARNING CENTRE FEES

Early Learning Centre fees are billed in advance at the commencement of each term.

The fees are structured on the annual running costs of the Early Learning Centre and no refunds or credits are given for "short" weeks due to public holidays or absences. Early Learning Centre fees are due in full 14 days from invoivce date.

## PAYMENT OPTIONS



**Direct Debit**

Annual School fees [R - Yr 12] may be settled in ten monthly instalments by way of direct debit. A $10/ month administrative charge applies. Complete the Direct Debit Request and return to the Business Office.



**BPAY**

Please call your bank to make a payment from your nominated savings or cheque account. You will need to enter the Biller Code 646414 and your reference number on the front of this account.



**Credit Card**

The School accepts payment by Visa and Mastercard. A 1 % surcharge applies to each transaction. Please complete the section below and return to the Accounts Receivable Dept. of the School. The ten monthly instalment plan [R - Yr 12] is available to credit card payments. Please complete the Credit Card Authority Request and return to the Business Office.



**Cheque**

Cheques should be made payable to Wilderness School and crossed Not Negotiable. Please return the remittance advice together with your cheque to Accounts Receivable, Wilderness School, PO Box 93, Walkerville SA 5081



**By Phone**

Phone 8344 6688 between the hours of 8.30am and 4.00pm and advise that you wish to make payment of your account by credit card. The School accepts Visa or Mastercard. A 1 % surcharge applies.



**EFTPOS**

EFTPOS facilities are available in the School's Front Office between the hours of 8.30am and 4.00pm. Present this account when you make payment.



**In Person**

Please present this account intact at the School's Front Office with your payment. Payments in person may be made via cheque, EFTPOS or credit card between office hours of 8.30am and 4.00pm.

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

**ANNEXURE SHEET**

This is the annexure marked with the letters **"RN-08"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this ___26___ day of August 2022.

Before me:

...........................................
Signature of witness

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

Name and qualification of witness

27

# Passenger Eticket Receipt

**"RN-08"**

## for NIEUWENHOVEN/ADELAIDE FRANCESCA MISS

### Travel Details

| | | | |
|---|---|---|---|
| Ticket Number | 081 - 3936090876 | **Issued Date** | 27 Jun 2022 |
| Booking Ref. | 5GMTSI | **Issuing Airline** | QF |
| Frequent Flyer | QF 1960960472 | | |

Enhance Travel
ABN: 64063195050
Phone: 0883324144
1/82 WALKERVILLE TERRACE
WALKERVILLE, SA 5081

Note: All times shown below are local times

Issued by CONSOLIDATED TRAVEL (023-1804 2)



| **02** Sat, 02 Jul 2022 | - Confirmed - |
|---|---|

**QF686** QANTAS — Qantas Airways

Adelaide, Australia (ADL)
02 Jul 2022 2:20PM (1420 hrs)
Adelaide Airport
Terminal 1

Melbourne, Australia (MEL)
02 Jul 2022 4:10PM (1610 hrs)
Tullamarine Airport
Terminal 1

Aircraft: BOEING 737 800 JET — Airline Ref: 5GMTSI — Fare Basis: BKW0ACH — Valid until 02 Jul — Seat TBA — Economy Class (B) — Baggage: 1PC — Special Requests: None



| **02** Sat, 02 Jul 2022 | - Confirmed - |
|---|---|

**QF93** QANTAS — Qantas Airways

Melbourne, Australia (MEL)
02 Jul 2022 9:10PM (2110 hrs)
Tullamarine Airport
Terminal 2

Los Angeles, United States (LAX)
02 Jul 2022 6:30PM (1830 hrs)
Los Angeles International Airport
Terminal B

Aircraft: BOEING 787-9 JET — Airline Ref: 5GMTSI — Fare Basis: BKW0ACH — Valid until 02 Jul — Seat TBA — Economy Class (B) — Baggage: 1PC — Special Requests: None



| **02** Sat, 02 Jul 2022 | - Confirmed - |
|---|---|

**QF3223** QANTAS — Qantas Airways

Los Angeles, United States (LAX)
02 Jul 2022 10:07PM (2207 hrs)
Los Angeles International Airport
Terminal - TBA

Orlando (MCO), United States (MCO)
03 Jul 2022 06:10AM (0610 hrs)
Orlando International Airport
Terminal 0

Aircraft: AIRBUS JET
Operated by: American Airlines — Airline Ref: 5GMTSI — Fare Basis: BKW0ACH — Valid until 02 Jul — Seat TBA — Economy Class (L) — Baggage: 1PC — Special Requests: None



| **24** Sun, 24 Jul 2022 | - Confirmed - |
|---|---|

**QF3115** QANTAS — Qantas Airways

Orlando (MCO), United States (MCO)
24 Jul 2022 7:46PM (1946 hrs)
Orlando International Airport
Terminal - TBA

Dallas FT Worth, United States (DFW)
24 Jul 2022 9:35PM (2135 hrs)
Dallas/Fort Worth International Airport
Terminal - TBA

Aircraft: AIRBUS JET
Operated by: American Airlines — Airline Ref: 5GMTSI — Fare Basis: KKX0ACH — Valid until 02 Jul — Seat TBA — Economy Class (M) — Baggage: 1PC — Special Requests: None

Transportation and other services provided by the carrier are subject to conditions of contract and other important notices which are delivered with this itinerary/Receipt and form part of the contract of carriage. Please ensure that you have received these notices and if not contact your nearest office of the issuing airline or travel agent to obtain a copy prior to the commencement of your trip. If the passenger's journey involves an ultimate destination or stop in a country other than the country of departure the Warsaw Convention may be applicable and the convention governs and in most cases limits the liability of carriers for death of personal injury and in respect of loss or damage to baggage.

Passengers should visit IATA website for complete details on Conditions of Contract at http://www.iatatravelcentre.com/e-ticket-notice/English/English/

28

# Passenger Eticket Receipt

## for NIEUWENHOVEN/ADELAIDE FRANCESCA MISS



**Travel Details**

| | |
|---|---|
| Ticket Number | 081 - 3936090876 |
| Booking Ref. | 5GMTSI |
| Frequent Flyer | QF 1960960472 |

Issued Date  27 Jun 2022
Issuing Airline  QF

Enhance Travel
ABN: 64063195059
Phone: 0883324144
1/82 WALKERVILLE TERRACE
WALKERVILLE, SA 5081

Issued by CONSOLIDATED TRAVEL (023-1604 2)

Note: All times shown below are local times



**24  Sun, 24 Jul 2022**  - Confirmed -

QF8
QANTAS
Qantas Airways

Dallas FT Worth, United States (DFW)
24 Jul 2022 10:50PM (2250 hrs)
Dallas/Fort Worth International Airport
Terminal D

Sydney, Australia (SYD)
26 Jul 2022 06:35AM (0635 hrs)
Kingsford Smith Airport
Terminal 1

Aircraft: BOEING 787-9 JET

Airline Ref: 5GMTSI
Fare Basis: KKX0ACH
Valid until 02 Jul

Seat TBA
Economy Class (K)
Baggage: 1PC

Special Requests
None



**26  Tue, 26 Jul 2022**  - Confirmed -

QF733
QANTAS
Qantas Airways

Sydney, Australia (SYD)
26 Jul 2022 08:40AM (0840 hrs)
Kingsford Smith Airport
Terminal 3

Adelaide, Australia (ADL)
26 Jul 2022 10:15AM (1015 hrs)
Adelaide Airport
Terminal 1

Aircraft: BOEING 737 800 JET

Airline Ref: 5GMTSI
Fare Basis: KKX0AGH
Valid until 02 Jul

Seat TBA
Economy Class (K)
Baggage: 1PC

Special Requests
None

**Receipt Details**

| | |
|---|---|
| Fare Calculation: | ADL QF X/MEL QF X/LAX Q19.11QF ORL1383.29QF X/DFW QF X/SYD Q19.11QF |
| | ADL 1122.48NUC2544.00END ROE1.409137 XF DFW4.5 |
| Tax Calculation: | XT 18.49QRCO 15.48QREB 6.50WGSE 66.13WYDE 16.40AYSE 26.60USAP 26.60USAS |
| | 5.80XACO 10.20XYCR 6.90YCAE 6.60XF |
| Form of Payment: | AX376011XXXXX1023/CC3833.60 |
| Endorsement: | CARRIER RESTRICTIONS APPLY FEES APPLY -BG:QF |

| | |
|---|---|
| Fare: | $3,585.00 |
| Fees: | $33.90 |
| Taxes: | $214.70 |
| | **$3,833.60** |

Transportation and other services provided by the carrier are subject to conditions of conduct and other important notices which are delivered with this Itinerary/Receipt and form part of the contract of carriage. Please ensure that you have received these notices and if not contact your nearest office of the issuing airline or travel agent to obtain a copy prior to the commencement of your trip. If the passenger's journey involves an ultimate destination or stop in a country other than the country of departure the Warsaw Convention may be applicable and in most cases limits the liability of carriers for death of personal injury and in respect of loss or damage to baggage.

Passengers should visit IATA website for complete details on Conditions of Contract at http://www.iatatravelcentre.com/e-ticket-notice/General/English/

29

# Passenger Eticket Receipt
## for PISANI/NICOLE FRANCESCA MS



| Travel Details | |
|---|---|

Ticket Number   081 - 3936090878   Issued Date      27 Jun 2022
Booking Ref.    5GMTSI               Issuing Airline  QF
Frequent Flyer  QF 1934298157

**Enhance Travel**
ABN: 64063195059
Phone: 0883324144
1/82 WALKERVILLE TERRACE
WALKERVILLE, SA 5081

Note: All times shown below are local times

Issued by CONSOLIDATED TRAVEL (023-1804 2)



**02   Sat, 02 Jul 2022** — Confirmed —
QF686
QANTAS
Qantas Airways
Adelaide, Australia (ADL)
02 Jul 2022 2:20PM (1420 hrs)
Adelaide Airport
Terminal 1
Melbourne, Australia (MEL)
02 Jul 2022 4:10PM (1610 hrs)
Tullamarine Airport
Terminal 1
Aircraft: BOEING 737 800 JET
Airline Ref: 5GMTSI
Fare Basis: BKWDA
Valid until 02 Jul
Seat TBA
Economy Class (B)
Baggage: 1PC
Special Requests
None



**02   Sat, 02 Jul 2022** — Confirmed —
QF93
QANTAS
Qantas Airways
Melbourne, Australia (MEL)
02 Jul 2022 9:10PM (2110 hrs)
Tullamarine Airport
Terminal 2
Los Angeles, United States (LAX)
02 Jul 2022 6:30PM (1830 hrs)
Los Angeles International Airport
Terminal B
Aircraft: BOEING 787-9 JET
Airline Ref: 5GMTSI
Fare Basis: BKW0A
Valid until 02 Jul
Seat TBA
Economy Class (B)
Baggage: 1PC
Special Requests
None



**02   Sat, 02 Jul 2022** — Confirmed —
QF3223
QANTAS
Qantas Airways
Los Angeles, United States (LAX)
02 Jul 2022 10:07PM (2207 hrs)
Los Angeles International Airport
Terminal - TBA
Orlando (MCO), United States (MCO)
03 Jul 2022 06:10AM (0610 hrs)
Orlando International Airport
Terminal 0
Aircraft: AIRBUS JET
Operated by: American Airlines
Airline Ref: 5GMTSI
Fare Basis: BKW0A
Valid until 02 Jul
Seat TBA
Economy Class (L)
Baggage: 1PC
Special Requests
None



**24   Sun, 24 Jul 2022** — Confirmed —
QF3115
QANTAS
Qantas Airways
Orlando (MCO), United States (MCO)
24 Jul 2022 7:46PM (1946 hrs)
Orlando International Airport
Terminal - TBA
Dallas FT Worth, United States (DFW)
24 Jul 2022 9:35PM (2135 hrs)
Dallas/Fort Worth International Airport
Terminal - TBA
Aircraft: AIRBUS JET
Operated by: American Airlines
Airline Ref: 5GMTSI
Fare Basis: KKX0A
Valid until 02 Jul
Seat TBA
Economy Class (M)
Baggage: 1PC
Special Requests
None

Transportation and other services provided by the carrier are subject to conditions of contract and other important notices which are delivered with this Itinerary/Receipt and form part of the contract of carriage. Please ensure that you have received these notices and if not contact your nearest office of the issuing airline or travel agent to obtain a copy prior to the commencement of your trip. If the passenger's journey involves an ultimate destination or stop in a country other than the country of departure the Warsaw Convention may be applicable and the convention governs and in most cases limits the liability of carriers for death of personal injury and in respect of loss or damage to baggage.

Passengers should visit IATA website for complete details on Conditions of Contract at http://www.iatatravelcentre.com/e-ticket-notice/General/English/

30



# Passenger Eticket Receipt
## for PISANI/NICOLE FRANCESCA MS

| Travel Details | | |
|---|---|---|
| Ticket Number | 081 - 3936090876 | Issued Date | 27 Jun 2022 |
| Booking Ref. | 5GMTSI | Issuing Airline | QF |
| Frequent Flyer | QF 1934298157 | | |

Enhance Travel
ABN: 64063195059
Phone: 0883324144
1/82 WALKERVILLE TERRACE
WALKERVILLE, SA 5081

Note: All times shown below are local times

Issued by CONSOLIDATED TRAVEL (023-1604 2)



**24** Sun, 24 Jul 2022 — Confirmed —

QF8
QANTAS
Qantas Airways

Dallas FT Worth, United States (DFW)
24 Jul 2022 10:50PM (2250 hrs)
Dallas/Fort Worth International Airport
Terminal D

Sydney, Australia (SYD)
26 Jul 2022 06:35AM (0635 hrs)
Kingsford Smith Airport
Terminal 1

Aircraft BOEING 787-9 JET

Airline Ref: 5GMTSI
Fare Basis: KKX0A
Valid until 02 Jul

Seat TBA
Economy Class (K)
Baggage: 1PC

Special Requests
None



**26** Tue, 26 Jul 2022 — Confirmed —

QF733
QANTAS
Qantas Airways

Sydney, Australia (SYD)
26 Jul 2022 08:40AM (0840 hrs)
Kingsford Smith Airport
Terminal 3

Adelaide, Australia (ADL)
26 Jul 2022 10:15AM (1015 hrs)
Adelaide Airport
Terminal 1

Aircraft BOEING 737 800 JET

Airline Ref: 5GMTSI
Fare Basis: KKX0A
Valid until 02 Jul

Seat TBA
Economy Class (K)
Baggage: 1PC

Special Requests
None

| Receipt Details | | | |
|---|---|---|---|
| Fare Calculation: | ADL QF X/MEL QF X/LAX Q25.48QF ORL1844.39QF X/DFW QF X/SYD Q25.48QF | Fare: | $4,780.00 |
| | ADL1496.66NUC3392.01END ROE1.409157 XF DFW4.5 | Fees: | $45.00 |
| Tax Calculation: | XT 60.00AUDP 19.49QRCO 15.48QREB 8.50WGSE 68.13WYDE 18.40AYSE 28.60USAP | Taxes: | $274.70 |
| | 28.60USAS 5.80XACO 10.20XYCR 8.90YCAE 6.60XF | | |
| Form of Payment: | AX376011XXXXX1023/CC5089.70 | | |
| Endorsement: | CARRIER RESTRICTIONS APPLY FEES APPLY -BG:QF | | |

$5,099.70

Transportation and other services provided by the carrier are subject to conditions of contract and other important notices which are delivered with this itinerary/Receipt and form part of the contract of carriage. Please ensure that you have received these notices and if not contact your nearest office of the issuing airline or travel agent to obtain a copy prior to the commencement of your trip. If the passenger's journey involves an ultimate destination or stop in a country other than the country of departure the Warsaw Convention may be applicable and the convention governs and in most cases limits the liability of carriers for death of personal injury and in respect of loss or damage to baggage.

Passengers should visit IATA website for complete details on Conditions of Contract at http://www.iata.org/sharing.com/e-ticket-notice/GeneralNotice/

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-09"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this 26 day of August 2022.

Before me:

...................................................

Signature of witness
R. Jules
J.P. No. 30143
..........A Justice of the Peace for......
South Australia
Name and qualification of witness

32

**"RN-09"**

10:30

+61 402 179 352

Sun  24 Jul  6:29 am

Ate u awake?

> Yep

Don't really feel like talking. Sad 😢

> Okay.

I want to stay. There is nothing for us in Australia nothing

> You can go back whilst Addys at school

No there's nothing for addy except u there as well

> Her brothers and sister
> Friends
> School

No they're not her brothers & sisters. She had no aunts &

Text Message

33



10:31

+61 402 179 352

I'm not sure what you want me to say?

It's okay to be sad or miss home

Exactly there's nothing to say

I want us all to move back

That can be discussed for sure when your back

Time for you to do 5yrs

I dare you. U couldn't last a few months

Okay

Ok you can come in sept

I'm using voice to text as I'm driving so my replies are always quite short because I shouldn't be texting and driving

We can come back in September

No we stay u come

Text Message



**10:32**

+61 402 179 352

Honey. I understand you're sad. The plan was always 3 weeks and come back.
I'm looking forward to seeing you and Addy. Very excited actually. It's been hard for me here without you guys.

All of these decisions need to be mapped and lined up in person. There's a lot to be excited about. I know you can't see it now with the emotions.

Sun 24 Jul 12:20 pm

Honey, can You please confirm you are coming back as planned?

Yes. I called Sam & had the flights changed to august 14 to give us two more weeks.

Hi Nicole. This wasnt discussed with me. If you want to stay longer that is up to you, but I expect Addy back as planned on Tuesday.

Text Message

35

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-10"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this ____ day of August 2022.

Before me:

..................................................
Signature of witness
Rosa Palzo
J.P. No. 30143
A Justice of the Peace for
South Australia
Name and qualification of witness

36

**"RN-10"**

## Rick Nieuwenhoven

| | |
|---|---|
| **From:** | Rick Nieuwenhoven |
| **Sent:** | Tuesday, 26 July 2022 2:39 PM |
| **To:** | Rick Nieuwenhoven |
| **Subject:** | Fwd: Adelaide NIEUWENHOVEN |

Sent from my iPhone

Begin forwarded message:

> **From:** Rick Nieuwenhoven <rickyn@nieuvision.com.au>
> **Date:** 25 July 2022 at 6:31:40 pm ACST
> **To:** nicolepisani <nicolepisani@yahoo.com>
> **Subject:** Adelaide NIEUWENHOVEN

Dear Nicole,

Addie was meant to be returning to Australia tomorrow Tuesday 26 July 2022. You have made it clear that you will not be returning as scheduled and have moved the flights to 14 August 2022. This has been done without my consent.

Your messages for the weekend, have concerned me immensely. Your cancellation of the existing return flights and your comments via text message that "theres nothing for us in Australia", and your subsequent withdrawal of $10,000 from our bank account, indicate that you intend to stay in the United States against my express wishes.

My consent for Addie to travel with you was for the purposes of a holiday and was for 3 weeks only. I do not consent to Addie staying longer than this. As you know she has been distressed at being separated from me, and is due to commence her early learning on Wednesday of this week. She needs to return home to her family.

If you wish to remain in the United States with your family for an extended period, you are welcome to do so, but I confirm that I expect Addie will return to Australia imminently. I have made enquiries and understand that there are flights available Saturday 6th August at 7:00am. I expect that you to confirm today that Addie will return on these flights, and you will make arrangements to secure those flights.

If you want to remain in the US and would like me to fly to you, so Addie can return to Adelaide with me, please let me know as soon as possible so I can make these arrangements.

Should you not respond to this message urgently by return, and **by 8:30am 26/7/2022 Adelaide time**; I will have no alternative but to commence legal action under the Hague Convention for Addie's immediate return to Australia. I will also take your behaviour as an indication that you wish to formally separate, and will seek appropriate legal advice in Australia as to parenting arrangements and a property settlement.

*I, Kym Rossell, hereby certify this document as a true copy of the original.*

1

I ask that you consider your response to this message carefully. Australia is Addie's home, and if you overhold her without my consent, then this will be considered to be child abduction. I do not wish to pursue legal action against you, but I am concerned you are not thinking clearly, and do not have Addie's best interests as a priority at this time.

I await your response.

Rick

I, Kym Rossell, hereby certify this document as a true copy of the original
CAAN2
26/7/22

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-11"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this ⟨26⟩ day of August 2022.

Before me:

..................................................

Signature of witness
~~ROSA FALCO~~
J.P. No. 30143
······A Justice of the Peace for··········
South Australia
Name and qualification of witness

**"RN-11"**     H

## Rick Nieuwenhoven

| | |
|---|---|
| **From:** | Rick Nieuwenhoven |
| **Sent:** | Tuesday, 26 July 2022 2:39 PM |
| **To:** | Rick Nieuwenhoven |
| **Subject:** | Fwd: Adelaide NIEUWENHOVEN |

Sent from my iPhone

Begin forwarded message:

> **From:** nicole pisani <nicolepisani@yahoo.com>
> **Date:** 26 July 2022 at 11:32:39 am ACST
> **To:** Rick Nieuwenhoven <rickyn@nieuvision.com.au>
> **Subject: Re: Adelaide NIEUWENHOVEN**

> This message was sent from outside of your organisation. Please do not click links or open attachments unless you recognise the source of this email and know the content is safe.

Dear Rick,

I had your consent to take Addy to the USA. The plan for this trip was to return Tuesday July 26 however additional circumstances have come up to prevent me from doing so. One being that I have broken my toe and traveling through 4 airports with luggage and a toddler would be quite difficult if not impossible. Secondly, Addy and myself have been enjoying ourselves so much after three years of not being able to see family, we both were sad to have to go back so soon. I have explained this in text messages and verbally.

Today at 7:30 I was on Facetime with you having you talk to Addy as requested for over 40minutes. At the end of the conversation you told me I had 30minutes to respond (impossible as I was putting her to bed). I told you that the plan was to come back on August 14 and that I needed more time to respond, at which point you berated me, threatened me, and hung up.

In order to facilitate my return I need to pay for the change of tickets. After I told you I had changed the tickets, you called Amex and blocked my card, the one I gave to pay for it, and when I asked you to pay for it you refused to pay, and "get involved". You then immediately proceeded to withdraw the remaining $3,000 left in my account leaving me without the ability to transfer funds. I do not have access to my money to change or purchase tickets, and as I told you last night, if they are not paid for risk loosing the entire fair. I request at this time that you return the 3,000 to my account, give me access to my credit card or a subsequent one, and make sure that I am paid on Wednesday.

As per the $10,000 withdraw, you always knew the plan was to withdraw this and additional funds to pay for purchases on our last trip as well as this one because there is a 3% additional service fee when using my card. We had discussed this before I left and why we both loaded up that account to the tune of an addidional 5K at the time of my departure. You yourself suggested the use of Wise transfer. I made that transfer with your full knowelege and consent the previous week.

*I, Kym Russell, hereby certify this document as a true copy of the original [signature] 40
cnnn2
26/7/22*

1

Your letter has clearly been written by a solicitor. You have not given me time to consult one and have blocked my financial resources to do so. This response is written under duress and without counsel. I request no further legal action is taken until I can obtain proper legal advice and we try to remedy this situation.

Sincerely,
Nicole

On Monday, July 25, 2022, 05:01:44 AM EDT, Rick Nieuwenhoven <rickyn@nieuvision.com.au> wrote:

> Dear Nicole,
>
> Addie was meant to be returning to Australia tomorrow Tuesday 26 July 2022. You have made it clear that you will not be returning as scheduled and have moved the flights to 14 August 2022. This has been done without my consent.
>
> Your messages for the weekend, have concerned me immensely. Your cancellation of the existing return flights and your comments via text message that "theres nothing for us in Australia", and your subsequent withdrawal of $10,000 from our bank account, indicate that you intend to stay in the United States against my express wishes.
>
> My consent for Addie to travel with you was for the purposes of a holiday and was for 3 weeks only. I do not consent to Addie staying longer than this. As you know she has been distressed at being separated from me, and is due to commence her early learning on Wednesday of this week. She needs to return home to her family.
>
> If you wish to remain in the United States with your family for an extended period, you are welcome to do so, but I confirm that I expect Addie will return to Australia imminently. I have made enquiries and understand that there are flights available Saturday 6th August at 7:00am. I expect that you to confirm today that Addie will return on these flights, and you will make arrangements to secure those flights.
>
> If you want to remain in the US and would like me to fly to you, so Addie can return to Adelaide with me, please let me know as soon as possible so I can make these arrangements.
>
> Should you not respond to this message urgently by return, and **by 8:30am 26/7/2022 Adelaide time;** I will have no alternative but to commence legal action under the Hague Convention for Addie's immediate return to Australia. I will also take your behaviour as an indication that you wish to formally separate, and will seek appropriate legal advice in Australia as to parenting arrangements and a property settlement.

I, Kym Gossell, hereby certify this document as a true copy of the original

Ẹ Gann2
26/7/22

2

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-12"** referred to in the Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before me this ___ day of August 2022.

Before me:

..................................

Signature of witness

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

Name and qualification of witness

42

**"RN-12"**



+61 402 179 352

Text Message
Mon, 25 Jul, 8:03 am

Good afternoon. Considering Addy's return has been altered without my consent. I would like to have a call schedule in place so I can FaceTime Addy. Can you confirm a satisfactory call routine. 2,3 times a week.

Oh sure honey. I was hoping it could be for more. Sometime for us to talk as well. I thought u would be fine with an extended stay especially Considering we are enjoying ourselves so much & u have been so understanding about my homesickness, also I really was going to have trouble thorough 4 airports with a broken toe. Why dont u make a schedule. I'd like that.

I would welcome a daily call from Adelaide. As I have requested in the past but was accused of being selfish.
Monday to Friday 8am Florida time.

The plan was to return tomorrow.



THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-13"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this ⸻ 26 ⸻ day of August 2022.

Before me:

.....................................

Signature of witness
Ross Falco
J.P. No. 30143
A Justice of the Peace for
South Australia
Name and qualification of witness

What is covered by Medicare?

"RN-13"

# What is covered by Medicare?

Medicare is the basis of Australia's health care system and covers many health care costs. You can choose whether to have Medicare cover only, or a combination of Medicare and private health insurance. Citizens and most permanent Australian residents are eligible for Medicare.

The Medicare system has three parts: hospital, medical and pharmaceutical.

## Hospital

Under Medicare you can be treated as a public patient in a public hospital, at no charge, by a doctor appointed by the hospital. You can choose to be treated as a public patient, even if you are privately insured.

As a public patient, you cannot choose your own doctor and you may not have a choice about when you are admitted to hospital.

**Medicare does not cover:**

- private patient hospital costs (for example, theatre fees or accommodation),
- medical and hospital costs incurred overseas,
- medical and hospital services which are not clinically necessary, or surgery solely for cosmetic reasons,
- ambulance services.

## Medical

When you visit a doctor outside a hospital, Medicare will reimburse 100% of the Medicare Benefits Schedule (MBS) fee for a general practitioner and 85% of the MBS fee for a specialist. If your doctor bills Medicare directly (bulk billing), you will not have to pay anything.

Medicare provides benefits for:

- consultation fees for doctors, including specialists,
- tests and examinations by doctors needed to treat illnesses, such as x-rays and pathology tests,
- eye tests performed by optometrists,
- most surgical and other therapeutic procedures performed by doctors,
- some surgical procedures performed by approved dentists,
- specific items under the Cleft Lip and Palate Scheme,
- specific items under the Enhanced Primary Care (EPC) program,
- specified items for allied health services as part of the Chronic Disease Management Plan.

**Medicare does not cover:**

- examinations for life insurance, superannuation or memberships for which someone else is

45

responsible (for example, a compensation insurer, employer or government authority),

- ambulance services;
- most dental examinations and treatment,
- most physiotherapy, occupational therapy, speech therapy, eye therapy, chiropractic services, podiatry or psychology services,
- acupuncture (unless part of a doctor's consultation),
- glasses and contact lenses,
- hearing aids and other appliances.
- home nursing.

## Pharmaceutical

Under the Pharmaceutical Benefits Scheme (PBS) you pay only part of the cost of most prescription medicines purchased at pharmacies. The rest of the cost is covered by the PBS. You must present your Medicare card to obtain this benefit.

The amount you pay varies with the medicine, up to a standard maximum. People with concession cards have a lower maximum payment.

**External Links**

46

THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

## ANNEXURE SHEET

This is the annexure marked with the letters **"RN-14"** referred to in the Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before me this 2 6 day of August 2022.

Before me:

...................................................
Signature of witness

Rosa Falco
J.P. No. 30143
A Justice of the Peace for
South Australia

Name and qualification of witness

47

**"RN-14"**

MENU ☰

Search 🔍

Home › Raising kids › Separated parents › Separating › Payments you can get

## Payments you can get

Going from a combined family income to a single income can be a big change. You may now need a payment, or the amount you already get might change.

**on this page**

If you're raising children

If you're looking for work or working variable hours

If you're studying

If you already get a payment

## If you're raising children

We can help you learn about child support and decide which collection arrangement is best for your family.

Family Tax Benefit is a 2 part payment to help with the cost of raising children.

Parenting Payment is the main income support payment while you're a young child's main carer. This payment is also for job seekers who are main carers of young children.

Child Care Subsidy is assistance to help you with the cost of child care.

Additional Child Care Subsidy gives some families extra assistance with the cost of approved child care. You may be able to get an additional subsidy if you're any of the following:

- a grandparent or great grandparent
- someone transitioning from certain income support payments to work
- someone in temporary financial hardship.

## If you're looking for work or working variable hours

JobSeeker Payment is financial help if you're between 22 and Age Pension age. This payment is also for when you're sick or injured and can't do your usual work or study.

## If you're studying

If you're considering re-entering the workforce, you may want to retrain or increase your skills. There's support available for retraining.

Youth Allowance for students and apprentices is financial help for students and apprentices aged 24 or younger and either:

- studying full time
- doing a full time Australian Apprenticeship.

Austudy is the main income support payment if you're 25 or older and a full time student or Australian Apprentice.

ABSTUDY is financial help for Aboriginal and Torres Strait Islander students and Australian Apprentices.

## If you already get a payment

If you already get a payment from us, it's important to update your details so we can pay you the right amount.



**Next:**
**Learning about child support**

Information to help you decide the type of child support arrangement that's right for your family. Theres help to calculate and apply for child support.

Was this page useful?  No  Yes

Page last updated: 10 December 2021



THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD
ABDUCTION 1980

APPLICATION FOR THE RETURN OF A CHILD

BY

**RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN**

Father

FOR

**ADELAIDE FRANCESCA NIEUWENHOVEN**

Child

**ANNEXURE SHEET**

This is the annexure marked with the letters **"RN-15"** referred to in the
Affidavit of **RICKY LEENDERT HENDRICUS THOMAS NIEUWENHOVEN** affirmed before
me this _26_ day of August 2022.

Before me;

..............................................
Signature of witness

**Rosa Falco**
..............................................
J.P. No. 30143
A Justice of the Peace for
Name and qualification of Witness
South Australia

49

**"RN-15"**



**Australian Government**

**Attorney-General's Department**

## Hague Convention on the Civil Aspects of International Child Abduction

August 2015

# Information for Parents Returning to Australia

A number of sources of assistance are available to parents returning to Australia with children after a Hague Convention application. If you were the respondent in a Hague Convention application against you, and your child/ren have been ordered to return to Australia, the following resources may help you find support and assistance if you return to Australia with the child/ren.

## Visas

If you and/or the child/ren need to apply for visas to return to Australia, you should contact the Department of Immigration and Border Protection. Information about all visas available to enter and/or reside in Australia can be found at www.border.gov.au.

You can contact the Department for advice about visa eligibility by using its web-form, available at http://www.border.gov.au/about/contact/make-enquiry/general, or by calling 131 881 from within Australia. To contact the Department from outside Australia, contact an Australian embassy or consulate, or find your nearest immigration office at http://www.border.gov.au/about/contact/offices-locations.

## Airfares

If you are unable to pay for airfares for your child to return to Australia, the Attorney-General's Department will ask the person seeking the return of the child/ren (the applicant) to pay the airfares. If they are unable to pay for the airfares, they may be able to apply for Commonwealth legal financial assistance under the 'Overseas Child Abduction Scheme' administered by the Attorney-General's Department. More information about the scheme is available at http://www.ag.gov.au/LegalSystem/Legalaidprogrammes/Commonwealthlegalfinancialassistance/Pages/Overseaschildabduction.aspx.

## Enforcement of orders and undertakings

The foreign court may have made other orders when it made the return order, about accommodation or financial support for you and the child/ren when you return, or about the applicant refraining from certain actions, or about interim parenting arrangements after the child/ren return. The applicant may also have made undertakings to the court about these things before the return order was made. Orders and undertakings made in foreign courts are not

automatically enforceable in Australia, which means that if the applicant does not comply with the orders or undertakings, you may not be able to enforce them after you or the child/ren return to Australia.

**Registering your foreign court order in an Australian court**

If the return order includes conditions which must be met *before* the return takes place, these orders would not need to be registered in Australia.

If the return order includes conditions which must be met *after* the return, you may want to consider registering the return order in Australia so it is enforceable in Australia. You can contact the International Family Law Section of the Attorney-General's Department on +61 2 6141 3100 or by email australiancentralauthority@ag.gov.au to discuss whether your order could be registered in Australia.

You may also wish to get legal advice in Australia about registering overseas orders, or about enforcement of registered orders. Read the 'Finding a lawyer' section to help you locate a lawyer or legal service in Australia.

**Consent orders**

If your order cannot be registered in Australia, you may want to talk to the applicant about obtaining consent orders in Australia which reflect the undertakings or orders made in the foreign court, so they are enforceable in Australia. If you both agree, you can make an application for consent orders to the Family Court of Australia.

The Family Court of Australia website has a do-it-yourself kit for consent orders, which you may be able to use to prepare an application for consent orders reflecting the undertakings or orders made in the foreign court. You can access the kit at http://www.familycourt.gov.au/wps/wcm/connect/fcoaweb/forms-and-fees/court-forms/diy-kits/kit-diy-application-consent-orders.

If you need help preparing an application for consent orders, read the 'Finding a lawyer' section to help you locate a lawyer or legal service in Australia.

**Non-consent orders**

If the foreign order cannot be registered in Australia, and the applicant is not willing to sign consent orders, you may want to seek legal advice from an Australian lawyer about applying to court for parenting orders. See the sections below about 'Resolving parenting disputes' and 'Finding a lawyer' for more information.

## Financial support in Australia

The Australian Department of Human Services administers Australia's social security (Centrelink), child support, and universal healthcare (Medicare) systems. You can find more information and application forms at www.humanservices.gov.au, or by calling the phone numbers below.

### Social security payments

If you need financial assistance you should contact Centrelink on the numbers below:

- +61 3 6222 3455 (from overseas)
- 132 468 for the automated information service
- 136 150 for family and parenting payments
- 132 850 for information about payments available to job seekers, or
- 132 490 for information about payments available to students

Emergency crisis or special benefit payments may also be available from Centrelink by calling 132 850.

### Child Support

If you wish to seek child support from another parent of your child, you should contact the Department of Human Services - Child Support on 131 272 or +61 3 6216 0864 from overseas.

### Medicare

Medicare provides free and subsidised access to some healthcare and medical treatment for Australian residents and some visitors to Australia. You can call 132 011 for more information about Medicare and how to apply.

## Accommodation

### Public Housing

Public housing in Australia is operated by each State and Territory government separately. For information about public housing in the State or Territory you are returning to, or to make an application for public housing, visit the website for the housing authority in that State or Territory. See the list below for websites and contact details:

**ACT:** http://www.communityservices.act.gov.au/hcs, Phone: 133 427

**NSW:** http://www.housing.nsw.gov.au/, Phone: 1300 468 746

**NT:** http://www.territoryhousing.nt.gov.au/, Phone: (08) 8999 5511

**QLD:** https://www.qld.gov.au/housing/, Phone: 13 74 68 or (07) 3405 0985

**SA:** http://www.sa.gov.au/topics/housing-property-and-land, Phone: 131 299 or (08) 8207 0211

**TAS:** http://www.dhhs.tas.gov.au/housing, Phone: 1800 800 588

**VIC:** http://www.housing.vic.gov.au/, Phone: 13 11 72 or (03) 9096 0000

**WA:** http://www.housing.wa.gov.au/, Phone: 1800 093 325 or (08) 9222 4666

### Emergency/Crisis Assistance

If you find yourself homeless, or about to become homeless, the housing authority in the State or Territory you are returning to (listed above) may be able to help you find emergency or crisis accommodation. The services listed below may also help you locate emergency accommodation:

Australia-wide

- The St Vincent De Paul Society: https://www.vinnies.org.au/findhelp
- The Salvation Army: 1300 371 288

**ACT:** First Point Homelessness Service: 1800 176 468, or http://firstpoint.org.au/

**NSW:** The City of Sydney Homelessness referral service (Link2Home): 1800 152 152 (24 hour service), or www.housing.nsw.gov.au/GHSH

**NT:** Dawn House in Darwin: (08) 8945 1388, or www.shelterme.org.au

**QLD:** Homeless Persons Information Queensland: 1800 474 753, or https://www.qld.gov.au/housing/emergency-temporary-accommodation/

**SA:** South Australian emergency or crisis accommodation: 1800 003 308, or http://www.sa.gov.au/topics/housing-property-and-land/housing/emergency-shelter-and-homelessness/accessing-services.

**VIC:** Victorian crisis accommodation referral service: 1800 825 955 (24 hour service which redirects you to the closest service to you), or http://www.housing.vic.gov.au/crisis-and-emergency-contacts

**WA:** Homeless Advisory Service: 1800 065 892, Crisis Care: (08) 9223 1111 or 1800 199 008 (24 hour service), or www.shelterwa.org.au.

## Domestic Violence Support

If you return to Australia with your child and you are concerned about your personal safety upon your return, the following resources may assist you to find information about what protections are available. If you are in immediate danger, call 000.

Australia-wide

- National Sexual Assault and Domestic Violence Hotline: 1800 RESPECT (1800 737 732) 24 hour service

**ACT:** Domestic Violence Crisis Service: (02) 6280 0900 or http://www.dvcs.org.au/

**NSW:** Domestic Violence Line: 1800 656 463 or http://www.domesticviolence.nsw.gov.au/

**NT:** Domestic Violence Counselling Service: (08) 8945 6200 or Dawn House: (08) 8945 1388

**QLD:** DV Connect Womensline: 1800 811 811, Mensline: 1800 600 636, or http://www.dvconnect.org/

**SA:** Domestic Violence Crisis Service: 1300 782 200

**TAS:** Family Violence Response Referral Line: 1800 633 937 or http://www.safeathome.tas.gov.au/

**VIC:** Family Violence Response Centre: 1800 015 188 or http://www.safesteps.org.au/, Men's Referral Service: 1800 065 973

**WA:** Women's Domestic Violence Helpline: 1800 007 339 or Men's Domestic Violence Helpline: 1800 000 599

## Resolving parenting disputes

Once you have returned to Australia with your child/ren, you and the other parent may still disagree about who the children should live with, or what access arrangements should be in place.

The Family Relationship Advice Line is a national telephone service established to assist families affected by relationship or separation issues. The Advice Line provides information on family relationship issues and advice on parenting arrangements after separation. It can also refer callers to local services that can provide assistance. The Family Relationship Advice Line is available on 1800 050 321 from 8 am to 8 pm, Monday to Friday, and 10 am to 4 pm on Saturday (local time), except national public holidays.

Family Relationships Online also provides information about family relationships and separation, and can be accessed at http://www.familyrelationships.gov.au.

3–5 National Circuit, Barton ACT 2600 | Telephone (02) 6141 6666 | Fax (02) 6141 5900 | www.ag.gov.au ABN 92 661 124 436

54

If you cannot resolve parenting disputes amicably, you might need to apply to a court for parenting orders. You should contact a lawyer for advice if you are considering applying for parenting orders. Please note that in most cases in Australia, the parties are required to attempt family dispute resolution before making a court application for parenting orders.

## Finding a lawyer

When you return to Australia you may need legal advice about making parenting arrangements for your child/ren, if you and the other parent can't agree. You can contact a lawyer, a State or Territory Legal Aid Commission or a community legal centre for legal advice. The following websites may help you find a lawyer or legal service:

- https://www.familylawsection.org.au/links
- http://www.naclc.org.au/need_legal_help.php
- http://www.nationallegalaid.org/

You can also call the Family Relationships Advice Line for referrals to family law services near you, on 1800 050 321 (or +61 7 3423 6878 from overseas).

## Other services and support

If you need additional support when you return to Australia, the following resources may help:

- Emergency services (police, fire or ambulance): 000

- Non-emergency police assistance: 131 444 (In Victoria, call your local police station)

- Lifeline: 131 114

- Kids Helpline: 1800 551 800

- International Social Service Australia: provides mediation, counselling and other services to people affected by separation of families across borders: 1300 657 843, or visit www.iss.org.au

- Translating and Interpreting Service (TIS): Free telephone interpreting to help you contact other organisations or services: 131 450 (or +613 9268 8332 from outside Australia).

- National Relay Service (NRS): Telephone assistance for people who are deaf or have a hearing or speech impediment, to help you contact other organisations with assistance. Visit http://relayservice.gov.au/ or call 1300 555 727 or 133 677 (for TTY users) from within Australia.

3–5 National Circuit, Barton ACT 2600 | Telephone (02) 6141 6666 | Fax (02) 6141 5900 | www.ag.gov.au ABN 92 661 124 436

55

## Calling Australian numbers from overseas

The Australian country code is +61.

Some numbers in the format 13 xx xx or 1300 xxx xxx can be accessed from overseas by adding your country's international dialling code and then 61 before dialling the number. Numbers in the format 1800 xxx xxx cannot generally be accessed from overseas.

Australian landline phone numbers are in the format (0x) xxxx xxxx, where the x in the brackets is the 'area code'. To dial a landline number from overseas, add your country's international dialling code and then add 61 at the start, and drop the zero in the bracket. For example, if calling from the United States the number would be 011 61 x xxxx xxxx.

3-5 National Circuit, Barton ACT 2600 | Telephone (02) 6141 6666 | Fax (02) 6141 5900 | www.ag.gov.au ABN 92 661 124 436