**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

RICK NEIUWENHOVEN,

        Petitioner,

v.                                                   Case No:   5:23-cv-34-GAP-PRL

NICOLE PISANI,

        Respondent

**ORDER**

This action for the return of a minor child under the Hague Convention came on for consideration after a bench trial held in Orlando, Florida from February 22-23, 2023.

**I.  Background**

It is undisputed that Petitioner Rick Neiuwenhoven ("Petitioner") and Respondent Nicole Pisani ("Respondent") were married in Adelaide, Australia on June 13, 2017, where they continued to reside thereafter. The parties also do not dispute that Petitioner is a citizen of Australia and that Respondent is a citizen of the United States of America with a resident visa to live in Australia. The parties have one minor child in common, Adelaide Francesca Nieuwenhoven ("Minor Child"), born on November 29, 2018, in Adelaide, Australia ("Adelaide"). Ex. 1.

After the Minor Child was born, the family lived together in Adelaide. During this time, the Minor Child attended at least one school, The Wilderness School, beginning at age three. *See* Exs. 18-21. The Minor Child has several step-siblings, an aunt, and a grandfather who live in the Adelaide area and are involved in her upbringing. The family traveled to central Florida on at least two occasions—in 2019, shortly after the Minor Child's birth, and in April of 2022—to visit the Respondent's relatives, but returned home to Adelaide after each trip.

It is uncontested that the Respondent and the Minor Child then traveled to Sumter County, Florida on July 2, 2022, during the Minor Child's school break to again visit the Respondent's family in the United States. Roundtrip flights were purchased for this trip, which included return legs to Adelaide on July 26, 2022. Ex. 51. Text messages between the parties and testimony in open court make clear that Petitioner expected the Respondent and the Minor Child to return to Adelaide departing on July 24, 2022. *See* Exs. 25-27. Respondent and the Minor Child never returned to Adelaide on those round-trip tickets. *See* Ex. 27.

Petitioner filed an Application for the Return of a Child in Australia in August of 2022. Ex. 29. The Petitioner then filed a Verified Petition for Return of Minor Child in Florida state court on December 13, 2022. *See* Doc. 5. Respondent removed the action to this Court on January 13, 2023, and the matter was expeditiously set for a bench trial. *See* Docs. 1, 17.

## II. Legal Standard

The Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"), Oct. 25, 1980[1], has been implemented in the United States through the International Child Abduction Remedies Act ("ICARA"). *See* 22 U.S.C. §§ 9001 *et seq*. The Convention "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." 22 U.S.C. § 9001(a)(4); *see also Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358 (11th Cir. 2020). The aim of the Convention is to "ensure the rights of custody and access under the law of one…[s]tate are effectively respected in the other…[s]tates." *Chafin v. Chafin*, 742 F.3d 934, 936 (11th Cir. 2013) (punctuation and citations omitted).

If one parent "wrongfully remove[s] or retain[s]" a child in the United States, the other may file a petition to have the child returned to her country of habitual residence. 22 U.S.C. § 9003(a)-(b). **A district court's role under ICARA and the Convention is limited to "determin[ing] only rights under the Convention and not the merits of any underlying child custody claims." *Id.* § 9001(b)(4).** To prevail, a petitioning parent must prove "by a preponderance of the evidence, that [the] child was wrongfully removed or retained within the meaning of the convention."

---

[1] Australia and the United States are both signatories to the Convention. *See* Contracting Parties, Status Table, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24.

*Id.* at § 9003 (a)-(b), (e)(1). Removal or retention is wrongful if:

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3; *see Berenguela-Alvarado*, 950 F.3d at 1358.

Should the petitioner carry his burden, he is entitled to have the child returned unless the retaining/removing parent can establish one of the enumerated affirmative defenses. 22 U.S.C. § 9003(e)(1)-(2); *Berenguela-Alvarado*, 950 F.3d at 1358. The Eleventh Circuit Court of Appeals ("Eleventh Circuit") has held that these affirmative defenses are to be "construed narrowly so as to prevent them from swallowing the rule and rendering the Convention a dead letter." *Berenguela-Alvarado*, 950 F.3d at 1358-59 (quoting *Gomez v. Fuenmayor*, 812 F.3d 1005, 1011 (11th Cir. 2016)).

The consent defense requires the retaining/removing parent to prove by a preponderance of the evidence that the petitioning parent "consented to…the removal or retention." Convention, art. 13(a); 22 U.S.C. § 9003(e)(2); *Berenguela-Alvarado*, 950 F.3d at 1359. While the petitioning parent's consent need not be formal, "it is important to consider what the petitioner actually contemplated and agreed to in allowing the child to travel outside its home country." *Berenguela-*

*Alvarado*, 950 F.3d at 1358 (quoting *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005)). Courts must focus their inquiry on the petitioning parent's subjective intent and should consider "[t]he nature and scope of the petitioner's consent, and any conditions or limitations" on that consent. *Id.*

The second affirmative defense requires the parent opposing the child's return to show by clear and convincing evidence that "there is a grave risk that his or her return would expose the child to physical and psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b); *Gomez*, 812 F.3d at 1012. A party seeking to establish this defense must "show that the risk to the child is grave, not merely serious." Hague International Child Abduction Convention: Text and Legal Analysis, 51 FR 10494-01, 10510 (1986) ("State Dept. Commentary"). Courts should only consider "evidence directly establishing the existence of [such] a grave risk." *Id.* at 10510. The Eleventh Circuit has held that courts need not also find that the home country is unable to protect the child from that grave risk of harm. *Gomez*, 812 F.3d at 1012 (citing *Baran v. Beaty*, 526 F.3d 1340, 1348 (11th Cir. 2008)). "The requisite finding for the exception to apply is not that the child has previously been harmed, but rather that return would expose him to a present grave risk of physical or psychological harm, or otherwise place him in an intolerable situation." *Baran*, 812 F.3d at 1013 (internal quotations omitted).

### III. Analysis

### A. Petitioner's Burden

The Petitioner bears the burden of proving by a preponderance of the evidence that the child was wrongfully removed or retained within the meaning of the convention. *See Berenguela-Alvarado*, 950 F.3d at 1358. Here, Petitioner, Respondent, and the Minor Child habitually resided in Adelaide, Australia immediately before removal. *See, e.g.*, Exs. 1-3, 7-8, 15, 18-21, 23, 27, 30. The Minor Child was born in Adelaide, Australia and resided there with both of her parents until 2022, attending at least one school and living among Petitioner's extended family. *See* Exs. 18-21. No evidence has been introduced to indicate that the Minor Child ever resided anywhere other than Adelaide, Australia. The only evidence of the Minor Child's ever having left Australia is testimony describing trips in 2019 and in April of 2022, when the family traveled together to visit Respondent's relatives in central Florida. The family returned to their home in Adelaide after those trips.

Respondent, at great length, offered various forms of vague testimony that the parties had agreed when they married to eventually settle in Florida and that, *ipso facto*, this Court should consider the Minor Child's habitual residence to be Florida. However, this Court does not find the Respondent's testimony to be credible and, even if it were, no relevant evidence has been presented to rebut the

fact that the Minor Child never resided anywhere other than Adelaide, Australia prior to her immediate—and unilateral—relocation to central Florida by the Respondent.

Therefore, this Court finds that, based on the totality of the circumstances, a preponderance of the evidence clearly demonstrates that the Minor Child's habitual residence was Adelaide, Australia. *See Monasky v. Taglieri*, 140 S.Ct. 719, 726-27 (2020) ("Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence."). Despite testimony from the Respondent and her mother that the Minor Child has attended a school and has engaged in other family and community activities since arriving in Florida seven months ago, there has not been a sufficient passage of time to evidence acclimatization to a new environment. *See Mendez Lynch v. Mendez Lynch*, 220 F.Supp.2d 1347, 1362 (M.D. Fla. 2002) (The Convention "requires that a court 'shall order the return of a child forthwith' where there has been a wrongful removal or retention, and less than one year has expired… ").

Moreover, testimony at trial from a licensed Australian family lawyer of over twenty years evinced that, under Australian law, Petitioner was entitled to equal rights with Respondent as regarded any determination of the Minor Child's residency or any relocation. *See also* Attorney-General's Department, *Rights of parents and children*, AUSTRALIAN GOVERNMENT, https://www.ag.gov.au/rights-

and-protections/human-rights-and-anti-discrimination/human-rights-scrutiny/public-sector-guidance-sheets/rights-parents-and-children. Instead of respecting those rights, Respondent unilaterally decided—on the eve of returning to the Minor Child's habitual residence in Australia, as the Petitioner had expected—that she and the Minor Child were relocating to central Florida permanently and would not be returning. Therefore, Petitioner's rights of parental custody, which were being exercised at the time of removal, were breached under the law of the state of the Minor Child's habitual residence, Australia.

In the absence of any presentation to the contrary, and based upon a preponderance of the evidence, this Court finds that Petitioner has met his burden of proving that the child was wrongfully removed from her state of habitual residence within the meaning of the convention. *See Berenguela-Alvarado*, 950 F.3d at 1358.

### B. Defenses

The burden of proof thus shifts to the Respondent to assert the application of one of the enumerated affirmative defenses under the Convention. *See* 22 U.S.C. § 9003(e)(1)-(2). In her Answer, Respondent constructively alleged that the defenses in Articles 13(a) and 13(b) are applicable.

1. *13(a)*

Respondent alleges, without any corroborating evidence, that it was the shared intent of the parties for the Minor Child to remain in the United States with Respondent. The evidence in the record and deduced at trial unquestionably shows that Petitioner did not consent to the Minor Child's permanent relocation from her habitual residence in Adelaide, Australia. Indeed, the record shows that Petitioner extended several offers to negotiate a compromise in response to Respondent's unilateral decision, but he made clear that he did not consent to the Minor Child's relocation to Florida. *See, e.g.,* Exs. 25, 30. ("Honey, I understand you're sad. The plan was always 3 weeks and come back…This wasn't discussed with me. If you want to stay longer that is up to you, but I expect [the Minor Child] back as planned on Tuesday.").

Apart from the evidence introduced by Petitioner representing the parties' communications and round-trip flight receipts, Respondent offered only duplicitous, self-serving testimony that pre-marital discussions may somehow equate to parental consent to relocate the Minor Child. As noted above, this Court does not find this testimony to be credible and instead finds that Petitioner expressly did *not* give his consent for the Minor Child to be removed from her habitual home and there was no shared intent between the parties to change the Minor Child's residence. *See Chafin*, 742 F.3d at 939.

2. *13(b)*

Finally, and again without any corroborating factual allegations, Respondent alleges that the "grave risk" defense in Article 13(b) of the Convention applies here. The Court, in trial, heard credible testimony from the Minor Child's nanny, Shirley Schallehn ("Ms. Schallehn"), that although she had noticed two marijuana plants at the house, she had never witnessed Petitioner abusing alcohol or using marijuana in the presence of the Minor Child. Ms. Schallehn otherwise testified that Petitioner was a present, engaged, and loving father and did not consider the family's residence in Adelaide, Australia, to be in any way unsuitable for a child. She further testified that had there been any such hazards or cause for concern for the Minor Child's welfare, she would have reported it to local authorities. Petitioner admitted to limited alcohol consumption and occasional and measured marijuana use which does not exceed that of an average household, which the Court found to be credible.

Conversely, Respondent, and her mother, JoAnn Pisani ("Mrs. Pisani"), engaged in rambling testimony at trial that amounted to vague—and otherwise unsubstantiated—allegations of various forms of abuse that had not been previously asserted in any court filings. As noted above, the Court does not find the Respondent's, or Mrs. Pisani's, testimony to be credible. After considering this testimony, the Court finds that Respondent has simply not met her burden to

show—by clear and convincing evidence—that there is any "grave risk of physical or psychological harm" to the Minor Child if she is returned to her country of habitual residence. On the contrary, the evidence shows that petitioner is a loving, caring, and engaged father with the Minor Child.

### C. Costs

Under 22 U.S.C. § 9007(b)(3), "[a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title *shall order* the respondent to pay necessary expenses incurred by or on behalf of the petitioner." *See also*, *Rath v. Marcoski*, 898 F.3d 1306, 1309-1311 (11th Cir. 2018). These costs include "court costs, legal fees…and transportation costs related to the return of the child." *Id.* Only a showing that such an order would be "clearly inappropriate" excepts a Respondent from these requirements. *Id.* The Court will therefore award Petitioner the reasonable costs of prosecuting this case.

### IV. Conclusion

Accordingly, the Court finds that the Minor Child was wrongfully removed from her country of habitual residence and is therefore due to be promptly returned, in accordance with the Hague Convention on the Civil Aspects of International Child Abduction. Therefore,

**JUDGMENT** is hereby entered for the Petitioner.

Plaintiff's counsel shall submit an application for fees and costs under 22 U.S.C. § 9007(b)(3) by **March 3, 2023**. Respondent shall file her response and any request for an evidentiary hearing by **March 17, 2023**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 23, 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party