**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**RICK NEIUWENHOVEN,**

     **Plaintiff,**

**v.**                                                                    **Case No: 5:23-cv-34-GAP-PRL**

**NICOLE PISANI,**

     **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

Petitioner Rick Neiuwenhoven initiated this action by filing a petition for the return of his minor child pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980, and 22 U.S.C. § 9001, the International Child Abduction Remedies Act ("ICARA"). Following a bench trial, the Court found that the minor child was wrongfully removed from her country of habitual residence and was due to be returned in accordance with the Hague Convention. The Court entered judgment for the Petitioner. (Doc. 53).

This case is now before me upon referral of Petitioner's application for attorney's fees and costs. For the reasons explained below, I recommend that Petitioner's motion (Doc. 66) be granted in part and denied in part, and that he should be awarded attorney's fees and costs

_____

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

in the total amount of **$45,210.30**. This total recommended award represents the portion of his claimed attorney's fees and costs that should be approved as reasonable and necessary, and also reflects reductions for a reasonable attorney hourly rate and a 30% reduction for financial hardship considerations.

## I.    Background

The Court has previously recited the basic history of this case. (Doc. 53). To summarize, Petitioner Rick Neiuwenhoven, an Australian citizen, filed a petition for the return of his minor daughter after the child's mother, Respondent Nicole Pisani, failed to return to Australia with the child following a trip to central Florida to visit Respondent's relatives. (Doc. 2). Petitioner initiated the action in the Circuit Court of the Fifth Judicial Circuit in Sumter County, Florida on December 13, 2022. (Doc. 2). On January 13, 2023, Respondent removed the case to this Court. (Doc. 1).

After a bench trial held on February 22 and 23, 2023, the Court found that the minor child was wrongfully removed from her country of habitual residence and was due to be promptly returned in accordance with the Hague Convention. (Doc. 53). The Court entered judgment for Petitioner and ordered that Petitioner would be awarded "the reasonable costs of prosecuting the case." (Doc. 53).

The Court also entered an Order on the terms of the transfer of custody. (Doc. 56). Pursuant to that Order, custody was transferred to Petitioner on February 27, 2023. (Doc. 56). That same day, Petitioner traveled back to Australia with the minor child via a flight departing from Orlando, Florida. (Doc. 66 at 50).

On March 2, 2023, Petitioner filed an application for fees and costs seeking a total of $101,117.00 in attorney's fees and $11,595.71 in costs. (Doc. 66). Meanwhile, Respondent

missed the deadline to respond to the application for fees and costs, and instead filed an emergency motion to stay pending appeal that was moot given that the minor child was no longer in the United States. (Doc. 60). The Court denied that motion (Doc. 64) and entered a show cause order (Doc. 65). Following Respondent's response, the Court vacated the show cause order. (Docs. 67 & 69). Petitioner renewed his motion for attorney's fees and costs, Respondent filed a response in opposition, and Petitioner filed a reply. (Docs. 70, 72 & 73). Although her response was filed untimely, the Court has nonetheless considered the objections raised by Respondent. Petitioner's motion for fees and costs is ripe for resolution.

## II.   Legal Standards

Here, the parties agree that an award of attorney's fees and costs is governed by ICARA's fee-shifting provision. *See* 22 U.S.C. § 9007(b)(3). An award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention," and (2) "to deter such [removal or retention.]" Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,511 (Mar. 26, 1986). The relevant provision provides, in pertinent part, as follows:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). The Eleventh Circuit has observed that this statutory language creates "a strong presumption in favor of fee-shifting." *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018). The Eleventh Circuit stated that "courts must place on the losing respondent the substantial burden of establishing that a fee award of clearly inappropriate." *Id.* (citing *Salazar*

*v. Maimon*, 750 F.3d 514, 522 (5th Cir. 2014)).

The Court thus must undertake two inquiries: (1) whether the petitioner's fees were necessary; and (2) whether an award of such fees would be "clearly inappropriate" in light of respondent's financial circumstances, subjective good faith in his or her actions, or other equitable circumstances. *See Moonga v. Moonga*, No. 1:17-CV-2136-TWT, 2018 WL 4026020, at *1 (N.D. Ga. Aug. 23, 2018).

When determining a reasonable attorney's fee, the Court applies the federal lodestar approach which is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors, including the results obtained. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). Additionally, the Court is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). Keeping in mind that "[c]ourts are not authorized to be generous with the money of others, and it is as much

the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

### III.    Discussion

Respondent raises numerous objections to Petitioner's application for fees and costs: (1) that an award would be clearly inappropriate because Respondent was acting in good faith when she retained the child in the United States; (2) that an award would be clearly inappropriate because Petitioner needlessly increased the costs; (3) that an award would be clearly inappropriate because Petitioner financially neglected his child and prevented Respondent from being able to financially support the child herself; (4) that the claimed hourly rate for attorney's fees is not reasonable; (5) that the number of attorney hours claimed is not reasonable; (6) that Petitioner is claiming fees for vague or irrelevant billing record entries; (7) that fees and expenses in relation to the state court complaint are not recoverable; (8) that fees related to clerical tasks are not recoverable; (9) that fees claimed for binder preparation are not recoverable; (10) that fees claimed for attorney travel time are not recoverable; (11) that block billing entries are not recoverable; (12) that costs claimed for printing are not recoverable; (13) that attorney travel expenses are not recoverable; and (14) that the travel costs for the Petitioner and child to return to Australia are excessive. (Doc. 72).

Given the applicable analytical framework, the fees and costs claimed, and the objections and arguments raised by Respondent, the Court will first address whether the fees and costs claimed were necessary, which includes consideration of the reasonableness of the total hours expended by Petitioner's counsel and the reasonableness of the hourly rates claimed. Next, the Court will consider Respondent's arguments that an award of fees and

costs in any amount would be clearly inappropriate under 22 U.S.C. § 9007(b)(3).

### A.    Necessity of Attorney's Fees Claimed

First, the Court will address whether the attorney's fees claimed by Petitioner were "necessary expenses" under § 9007(b)(3). Respondent objects to the claimed attorney's fees on several grounds. Because it is an overlapping inquiry, taking into consideration Respondent's objections, the Court will also address whether the category or the number of hours claimed is unreasonable under the circumstances.

#### 1.    *State Court Phase of Litigation*

Most notably, Respondent contends that fees and expenses incurred in relation to the state court action are not recoverable. Respondent argues "Petitioner's counsel unnecessarily spent a significant amount of time and resources on the complaint filed in the wrong jurisdiction and for said reason, these are not subject to fee-shifting." (Doc. 72 at 10). For this category alone, Respondent seeks a reduction of $36,983.50, representing fees from August 9, 2022, through January 13, 2023. (Doc. 72 at 10).

To be sure, this case has involved litigation involving issues of international law and governmental entities in both the United States and Australia. As reflected in the Verified Petition for Return of Minor Child, Petitioner's attempts to obtain the return of his minor child began at least as early as July 25, 2022, when, via email correspondence to Respondent, he clarified that Respondent did not have his consent to retain the child and extend the child's stay in the United States. (Doc. 5 at 52). In that same correspondence, Petitioner requested the minor's return and asserted his rights under the Hague Convention. It is safe to say that by that date, Petitioner necessarily retained or needed to retain counsel. The earliest date upon which claimed attorney's fees were billed appears to be August 9, 2022, soon thereafter. (Doc.

66 at 6). The Court further notes that the earliest billing records reference a "family attorney in Australia," but no claim has been made for legal fees from Australian counsel. (Doc. 66 at 6).

Respondent's argument that attorney's fees incurred during the state court proceedings are not recoverable is entirely misplaced. Although Respondent contends that state court was the "wrong jurisdiction," "the courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention [on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980." 22 U.S.C § 9003(b). Petitioner correctly asserts that this matter was properly filed in state court and could have been fully adjudicated there. Respondent, however, removed the matter to this Court, as Petitioner observes, "on the last day possible for removal." (Doc. 73 at 2).

Authority cited by Respondent clarifies that the standard is whether the expenses are necessary to obtain the return of the child. *See Aldinger v. Segler*, 157 F. App'x 317, 318 (1st Cir. 2005) (disallowing expenses for father's visits to children while they were retained and stating "[t]he district court correctly held that those visits were not necessary to enable the father to obtain the return of the children") (citing Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,511 (Mar. 26, 1986)  (noting that "necessary expenses" encompass expenditures required "to secure the child's return")). For example, Respondent cites multiple cases for the proposition that legal fees related to visitation issues are not recoverable. *See, e.g.*, *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 937 (W.D. Tex. 2012) (finding fees and costs incurred in obtaining a court order providing for increased visitation hours, without more, are not awardable). Respondent, however, attempts

to apply this logic to exclude the entirety of fees incurred during the state court proceedings from August 9, 2022, through January 13, 2023. Her argument is not persuasive.

The undersigned has scrutinized every time entry for attorney's fees contained in Petitioner's application for fees and costs. With a few exceptions noted below, the time entries plainly reflect fees that were directly incurred to obtain the return of the minor child. As Petitioner correctly notes, the action could have proceeded entirely in state court had Respondent not opted to remove the matter to this Court. Further, it is apparent that the bulk of fees incurred from August 9, 2022, through January 13, 2023, were in furtherance of efforts to obtain the return of the child and in support of the verified petition for return of minor child, ultimately filed in state court on December 13, 2022. (Doc. 5). In fact, the verified petition filed in the state court is the same petition that was removed to this Court and upon which the case was adjudicated. The great majority of time entries claimed during the state court phase of the litigation reflect work done in furtherance of the petition and are plainly related to claims or defenses in the case and to Petitioner's efforts to secure the return of the child. Examples include communication with client, research regarding the Hague Convention, preparing the petition, completing necessary forms for submission to Australian authorities under the Hague Convention, preparing witness affidavits, motions regarding surrender of the child's passport, and discovery. Even entries that appear to relate to a marital financial dispute are equally relevant to the petition, as Petitioner argued that Respondent's spending was relevant to her intent to retain the child in the United States. (*See, e.g.*, Doc. 66 at 6, "review and respond to emails: Wife spending 85K on Amex").

That said, there are several time entries that appear related to visitation issues, requests for contact with the child, collateral litigation disputes, and general marital disputes, as

opposed to efforts directly necessary to obtain the return of the child. Those non-reimbursable entries are identified by yellow highlighting in the Court's Exhibit B and are due to be excluded from a fee award, thus they are not included in the Court's calculations of approved fees.

### 2.    Entries Referencing Marion County

Next, Respondent objects to time entries that she contends are an "obvious error" because they reference Marion County, when the case was filed in Sumter County, Florida. (Doc. 72 at 5). Respondent speculates the entry "most likely is for another case and/or client." Doc. 72 at 5). As Petitioner clarifies, Respondent is simply mistaken because the state court matter was reassigned to a judge in Marion County pursuant to the Counties' joint Administrative Order A-2019-24 Appointing Judge with Primary Responsibility for Hague Convention Cases. (Doc. 72 at 2). Respondent's objections to entries referencing Marion County should be overruled.

### 3.    Entries Objected to for Defective Billing

Respondent also objects to claimed attorney time entries on the basis that they are vague, irrelevant, duplicative, and include deficient subcategories making them impossible to distinguish between time spent on necessary and unnecessary tasks. Respondent contends that these types of billing are defective and require a denial of fees or a flat reduction of a specific percentage across the board for defective billing. Respondent also contends that irrelevant billing should be reduced to zero. Respondent states "Annexed as Exhibit A is a Table listing all the entries within Petitioner's attorneys' time sheets to which Respondent objects with an explanation for each objection in italics beneath it." There is, however, no Exhibit A or Table such as Respondent describes attached to or contained within her

response. (Doc. 72). Accordingly, the undersigned is incapable of evaluating the specific objections Respondent references.

Respondent does, however, give examples within her brief of some of her objections. They include that the invoices are peppered with "Review and Respond to email from client," "Review," "Review and Save," "Review and Respond to emails," "Preparation of email," "Preparation of," "Prepare for trial," "Phone call," Email to client," or "Conference with client." Respondent contends these entries lack explanation of how they were related to the child's return or what the topics of the emails were, and that it is impossible to evaluate them and determine whether they were necessary for the child's return.

The Court disagrees. Having carefully reviewed the hundreds of time entries for the claimed attorney's fees, the undersigned finds that when read in context they contain sufficient detail demonstrating that the entries were necessary and in furtherance of the petition for the return of the child and the ongoing litigation. The Court's review is aided by the fact that all time entries specify the date, the attorney or paralegal performing the work, the activity (for example, "Work on File"), an additional description (for example, "Work on file: Research procedure on voluntary return letter is sent and review documents to be submitted to court if voluntary return is not agreed to"), the amount of time spent in hours, and the total fee charged for that specific entry. (Doc. 66 at 13). Further, the undersigned notes that, with very few exceptions, the time entries are modest, and only claim time for a very small fraction of an hour (many are only .1 hour), or an otherwise modest amount of time given the task undertaken. Given the nature of this action, the parties and issues involved, the expedited nature of the action, and the proceedings required, the Court does not find the entries defective.

Respondent has specifically objected to numerous time entries on dates between January 20, 2023, and February 26, 2023, arguing that they are vague, lack explanation, or are multiple entries for the same task by both attorneys. (Doc. 72 at 9). Having reviewed these time entries, the undersigned finds that Respondent's objections are due to be overruled. Notably, those entries fall immediately after the case was removed to this Court, motion practice was occurring, discovery was ongoing, and case management and discovery was well underway. Remarkably, even during that period, few of the claimed time entries reflect large amounts of time, and it is entirely reasonable that both of Petitioner's counsel would have been billing time on similar or even the same task given the posture of the case, the upcoming trial, and the need for counsel to confer regarding case related matters.

Respondent objects to $10,254.00 worth of billing entries of the basis of vagueness. For the reasons explained above, those objections should be overruled.

### 4.    *Block Billing*

Respondent also makes a general objection to "block billing" and contends that many of Petitioner's attorney's time entries are "block billed," although she does not specify which entries fall into that category. Respondent requests an additional across the board reduction to fees, in addition to the exclusion of the allegedly "irrelevant and unacceptably vague" entries discussed above.

Generally, "block billing makes [review of bills] unnecessarily difficult." *Zachloul v. Fair Debt Collections and Outsourcin*g, No. 8:09–CV–128–T–27–MAP, 2010 WL 1730789, at *3 (M.D. Fla. Mar. 19, 2010). Block billing also can warrant "reduction of the number of hours claimed in the attorney's fee motion." *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010). While attorneys need not account for every moment, they must be

able to explain the nature of the work via discrete entries. *Id.* The court has broad discretion in determining the extent to which a reduction in fees is warranted by block billing. *See Ferrate Treatment Techs., LLC v. Ciampi*, No. 6:06-CV-1565 ORL 28KRS, 2007 WL 1128962, at *3 (M.D. Fla. Apr. 16, 2007) (recommending no fees be awarded for certain block billed time entries); *Gundlach v. Nat'l Ass'n for Advancement of Colored People, Inc.*, No. 3:03-CV-1003-J-32-MCR, 2005 WL 2012738, at *4 (M.D. Fla. Aug. 16, 2005) (assessing an across-the-board reduction of thirty percent due to block billing); *Guetzloe Group, Inc. v. Mask*, No. 6:06-cv-404-Orl-22JGG, 2007 WL 2479335, at *3 (M.D. Fla. Aug. 28, 2007) (recommending no reduction despite block billing).

Upon review, the Court can identify no entries that appear to reflect inappropriate block billed time. The billing records reflect well-described tasks that explain the nature of the work done by Petitioner's counsel. Further, in nearly all instances, the time entries reflect a single task that is related to the petition and in furtherance of obtaining the return of the child. A few entries reflect multiple related tasks, for example, "review list of witnesses, motion for information on child and discuss request for production." (Doc. 66 at 20). Given the posture of the case, the parties involved, and the nature of the proceedings, it is readily apparent that even the entries reflecting more than one specific task are appropriate and reflect necessary work. Respondent's objection to block billing is due to be overruled.

### 5.   Clerical Work

Respondent also objects to $13,455.50 in fees that she claims are inappropriately billed as attorney time because they are for clerical work. Examples of Respondent's objections include entries related to submitting the complaint by email, filing proof of service, and "File Management," and "Finalize and File" tasks. Entries that Respondent specifically identifies

as objectionable on this basis are those on January 13, 2023, February 6, 2023, February 24, 2023, and February 27, 2023, and March 2, 2023.

The Court has carefully reviewed all the time entries for these dates and finds them reasonable and related directly to the pending litigation and efforts to obtain the return of the child. Further, none of the time entries on those dates are excessive; they all reflect a modest amount of time spent on tasks that the Court finds were reasonable and necessary in the context of the litigation. Meanwhile, Petitioner has only claimed 15.9 hours of Paralegal time, and it is typical (and even necessary) for attorneys to perform the functions contained in the objected to entries, such as reviewing and redacting documents, conducting research, and reviewing and saving expense receipts relevant to pleadings.

Respondent also objects to entries falling between January 13, 2023, and February 23, 2023, entered as "Research" and "Review," as well as entries labeled "Preparation for Trial" or "Preparation of." (Doc. 72 at 12). Petitioner describes these objections as "absurd," and contends that a legal assistant "cannot conduct the necessary legal research for any legal matter let alone the wrongful withholding of a minor child internationally." (Doc. 73 at 3.) Having reviewed the relevant time entries carefully, the Court finds Respondent's objections without merit. Given the posture of the case at the time the entries were made, it is entirely reasonable and necessary that counsel for Petitioner would be actively preparing for trial and researching relevant factual and legal issues.

### 6.    *Review of Respondent's Exhibits*

Next, the parties dispute whether it is reasonable for Petitioner to claim attorney's fees for reviewing Respondent's trial exhibits. Respondent contends that $1,913.50 in fees should

be deducted that are attributed to this task and specifically objects to entries dated on or around February 21, 2023.

Respondent argues that she was "unable to introduce exhibits or witnesses due to the Respondent's previous attorney failure to provide his exhibits or witness list to Petitioner." (Doc. 72 at 9). Presumably referring to Petitioner's counsel, Respondent argues, "[a]t trial, Petitioner was vehement that she had never received the exhibits or witness list." (Doc. 72 at 9-10). Respondent contends that any time entries related to review of her exhibits should be "excluded as a sanction for the misrepresentation to the Court that they never received the exhibits or witness list." (Doc. 72 at 10). In response, Petitioner states that "[u]ndersigned counsel never represented that no exhibits or witness list were provided by Defendant; rather, undersigned counsel was prepared to respond to the exhibits Defendant provided for use at trial." (Doc. 73 at 5). Petitioner goes on to explain that Respondent attempted to introduce one exhibit into evidence, but it was objected to and excluded because it had never been provided. (Doc. 73 at 5).

For context, it appears that the time entries objected to by Petitioner occurred just prior to commencement of the trial in this matter. Respondent does not dispute that her counsel (or her prior counsel) discussed exhibits with Petitioner's counsel and identified documents as proposed trial exhibits. Counsel for Petitioner could not have anticipated that Respondent's exhibits would ultimately be excluded at trial. Indeed, to properly prepare for trial, any prudent attorney would have reviewed the potential exhibits as Petitioner's counsel did here. Respondent's objections to time entries related to Petitioner's counsel's review of Respondent's exhibits should be overruled.

### 7.      Binders

Respondent objects to entries related to the preparation of binders to be used at trial and suggests that this task is clerical in nature and not compensable. As Petitioner points out, however, the relevant entries relate directly to the preparation of five binders required by the Court's pretrial procedures, including one for the Court, one for the clerk, one for the witnesses, one for Defense counsel, and one for counsel. These binders included exhibits of 51 pages, consisting of multiple pages. As Petitioner explains, both the attorney time taken to prepare the binders and the printing costs for the documents were necessary for the trial. The Court agrees that both the attorney's fees and printing costs associated with the binders were necessary and reasonable.[2]

### 8.      Attorney Travel Time

Next, Respondent objects to travel time billed by Petitioner's counsel. Respondent argues that it is not reasonable to bill for travel time at their full hourly rates. Respondent objects to entries claiming travel time for February 21, 2023, and February 24, 2023, reflecting counsel's travel via air from Miami to Orlando for the trial. (Doc. 72 at 13). Respondent argues that the total fees attributed to travel time for these entries is $6,265. (Doc. 72 at 13).

Upon review, the Court finds that counsel's reasonable travel time to attend the trial is compensable. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1557 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997). However, all of Petitioner's counsel's travel time is not recoverable. Petitioner is claiming 14 total hours of travel time (3.5 hours for each of two attorneys, each

---

[2] Respondent states that the fee associated with the binders is $50 (Doc. 72 at 12), however, the time entries related to this task appear to be on February 9 and 10, 2023, and reflect 2.2 hours of time and 1.5 hours of time, respectively, for Erica Estevez. In either case, the amount of attorney hours is reasonable for this critical task.

way). This time spent did not require any legal skill or experience, and there is no assertion that productive work was done during the travel time that was not otherwise billed. Additionally, this travel time was incurred in part because Petitioner chose counsel located in Miami when this matter was pending in Sumter County, then was removed to this Court in the Ocala Division of the Middle District of Florida, and the trial occurred in Orlando. While Petitioner is free to choose the representative of his choice, the fact that counsel needed extra travel time to attend the trial is not necessarily taxable to Respondent and should be reduced. *See Bookman v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 147177, 2011 WL 12497233 (M.D. Fla. Nov. 2, 2011) (reducing excessive travel time); *Dillard v. City of Foley*, 995 F. Supp. 1358, 1370–71 (M.D. Ala. 1998) (reducing but not denying travel time where case could have been litigated by able local counsel). Thus, the Court finds it appropriate to reduce the claimed travel time by fifty percent to reflect a total of 7 hours of travel time (3.5 total hours for each of the two attorneys).

9.      *Time Spent Preparing Fee Petition*

Respondent also objects to various entries that reflect work related to the petition for fees, such as an entry of March 2, 2023, regarding updating and finalizing the attorney's fee application. (Doc. 72 at 11). Respondent claims that tasks such as these were not "necessary" for the child's return in the context of the litigation. A review of the entries for the claimed fees reveals that they reflect modest fees attributed to preparing and filing the application for attorney's fees, and that the last time entry is dated March 2, 2023. (Doc. 66 at 37).

Respondent contends that the fees related to the attorney's fee application were not necessary for the child's return in the context of this litigation. (Doc. 72 at 11). The undersigned notes that the fee application was filed due to the Court's directive in its Order

entered February 23, 2023. (Doc. 53). Further, Respondent contends that the entries related to the fee application total only $1,988.50. (Doc. 72 at 11).

As explained further below, I recommend reduction to the hourly rate claimed by both of Petitioner's counsel, as well as to the total fee award. Within that context, and because the fees related to the fee application are minimal, the undersigned recommends that it is appropriate that the fees be included in the fee award.

### B.    Reasonableness of Hourly Rates

The Court now turns to Respondent's objection regarding the reasonableness of the hourly rate claimed by Petitioner's counsel. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id*. In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga.*, 168 F.3d at 437. The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *See Norman*, 836 F.2d at 1299. At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work; instead, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* The trial court, itself, is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Id*. at 1303.

Here, Petitioner requests a fee award based on the hourly rates of $495 per hour for Karen Lungarelli, Esq., $400 per hour for Erica Estevez, Esq., and $175 per hour for paralegal work.[3] It appears that these are the rates at which Petitioner was billed and paid for the work of his attorneys. Meanwhile, Respondent correctly observes that Petitioner has not submitted an affidavit of an attorney who practices in the areas of ICARA and the Hague Convention to establish the reasonableness of the hourly rates claimed. Respondent has also not submitted an affidavit establishing the skills, experience, and reputation of Ms. Lungarelli and Ms. Estevez, and the Court declines to speculate on those details. The fee application only asserts that Ms. Lungarelli has been practicing in Florida since 2010 but does not address Ms. Estevez's experience or qualifications. (Doc. 66 at 1).

Notably, there is legal precedent in the Middle District of Florida regarding reasonable attorney fee rates in ICARA and Hague Convention cases. *In Rath v. Marcoski*, the district court found that hourly rates of $325 (for an attorney with approximately 35+ years of experience) and $250 (for an attorney with approximately 9 years of experience) per hour were reasonable in the Tampa market in a case brought under the Hague Convention. *Rath v. Marcoski*, No. 8:16-CV-2016-T-23AEP, 2018 WL 446651, at *1 (M.D. Fla. Jan. 17, 2018), *aff'd*, 898 F.3d 1306 (11th Cir. 2018).

In *Toufighjou v. Tritschler*, the Court awarded attorney's fees in a Hague Convention case at the rate of $350 per hour for a total attorney fee award of $15,554.25. *Toufighjou v. Tritschler*, No. 8:16-CV-1709-T-33JSS, 2016 WL 6122465, at *2 (M.D. Fla. Sept. 30, 2016), *report and recommendation adopted*, No. 8:16-CV-1709-T-33JSS, 2016 WL 6084097 (M.D. Fla.

---

[3] Respondent does not object to the paralegal hourly rate.

Oct. 18, 2016); *see Olesen-Frayne v. Olesen*, No. 2:09-CV-49-FTM-29DNF, 2009 WL 3048451, at *3 (M.D. Fla. Sept. 21, 2009) (reducing claimed attorney's fee hourly rates to $300 and $275 per hour in Hague Convention case when granting fee award); *see also Sewald v. Reisinger*, No. 8:08-CV-2313-T-27TBM, 2015 WL 6964290, at *2 (M.D. Fla. Nov. 10, 2015) (awarding fees based on attorney's hourly rate of $250 per hour in Hague Convention case); *see also Lamiri v. Audette*, No. 615CV1810ORL28TBS, 2015 WL 13741736, at *4 (M.D. Fla. Dec. 22, 2015), *report and recommendation adopted*, No. 6:15-cv-1810-Orl-28TBS, 2016 WL 452317 (M.D. Fla. Feb. 5, 2016) (reducing attorney's hourly rates to $300 for lead attorney and $150 per hour for an unnamed associate in Hague Convention case).

For comparison, elsewhere in the Eleventh Circuit, an hourly rate of $400 per hour has been approved in the Southern District of Florida in a Hague Convention case. *Ascanio v. Crespo*, No. 21-CV-23396, 2022 WL 1812251, at *3 (S.D. Fla. May 11, 2022), *report and recommendation adopted*, No. 21-CV-23396, 2022 WL 1801109 (S.D. Fla. June 2, 2022). Meanwhile, the rates of $375 per hour and $325 per hour were found to be reasonable hourly rates in a Hague Convention case in the Savannah market. *Munoz v. Diaz*, No. 4:22-CV-9, 2023 WL 139732, at *7 (S.D. Ga. Jan. 9, 2023)

Under the circumstances here, given the scant information in the record regarding the experience and expertise of Petitioner's counsel, the type of case and the related risks, the Court's knowledge of prevailing market rates in the Ocala Division and the Middle District of Florida, and the Court's findings regarding hourly rates in other cases (including Hague Convention and ICARA cases), the undersigned recommends that the requested hourly rate for Ms. Lungarelli be reduced from $495 per hour to $300 per hour, and that the requested hourly rate for Ms. Estevez be reduced from $400 per hour to $250 per hour.

Despite it being his burden and required by Local Rule 7.01(c)(4)(F), Petitioner has not provided the Court with evidence such as detailed information regarding his counsel, their experience, and affidavits establishing the prevailing market rate. Petitioner asserts little more than that Ms. Lungarelli has been licensed to and engaged in the practice of law in Florida since 2010. Meanwhile, virtually no information is provided about the experience or qualifications of Ms. Estevez. While the Court acknowledges that rates of $325 per hour or more have been approved in the Middle District in Hague Convention cases, the Court takes note that a higher hourly rate has typically been approved in cases either involving an attorney with multiple decades of experience (such as in *Rath v. Marcoski, supra*) or involving a relatively modest total fee award (such as in *Toufighjou v. Tritschler, supra*).

The Court also recognizes that the number of hours claimed in this case is large. The case was filed in state court, removed to this Court, and required a full-blown trial. The undersigned believes this circumstance requires close scrutiny of the hourly rate. It is one thing to approve an hourly rate of $400 or more where the total number of hours is modest and the potential attorney's fee award is just a few thousand dollars. Here, however, Petitioner claims 99.1 hours of time for Ms. Lungarelli and 123.2 hours for Ms. Estevez, resulting in 222.3 hours of attorney time. Including paralegal fees, Petitioner seeks $101,117.00, as well as costs of $11,595.71.

Further, this case was removed to the Ocala Division of the Middle District of Florida from state court, and none of the current attorneys of record in this action are from the Ocala area: Ms. Lungarelli is from Miami, and Ms. Marin is from Orlando. That said, the Court's own research into prevailing attorney's fee rates reveals that, in the Middle District of Florida at least, there is no shortage of capable attorneys willing to handle cases brought under the

Hague Convention and ICARA. Further, the case law does not suggest that the prevailing market rate in this division for cases under the Hague Convention is considerably higher than in the average civil matter. Although involving aspects of international law, the central issues in this case were those of a typical family law dispute. And, if Respondent herself had not removed the case to this Court, it may have proceeded entirely in state court. In other words, the Court finds it unnecessary to give weight to prevailing rates in another area (such as Miami) or to compare this matter to uniquely complex types of litigation.[4]

With these considerations in mind and drawing on the Court's own knowledge and expertise regarding the prevailing market rates in the Middle District of Florida, and in consideration of the overall circumstances including the lack of information provided by Petitioner, the undersigned recommends that a reasonable rate for Ms. Lungarelli is $300 per hour, and $250 per hour for Ms. Estevez.

### C.      Calculation of the Lodestar

The lodestar is calculated multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). As discussed above, the Court recommends that an appropriate hourly rate for this case for Ms. Lungarelli is $300 per hour and for Ms. Estevez is $250 per hour. Also as discussed above, reductions are warranted to the attorney time claimed as reflected in the Court's Exhibits A and B. The Court's lodestar calculations are set forth in detail in the Court's Exhibit A

---

[4] For comparison, cases arising under the Federal Claims Act have been found to warrant higher hourly rates for attorney's fees given the complexity of the actions and relative risks. *See United States v. Tran*, No. 5:15-CV-60-OC-CEMPRL, 2020 WL 9455629, at *3 (M.D. Fla. Oct. 5, 2020), *report and recommendation adopted*, No. 5:15-CV-60-OC-41PRL, 2020 WL 9455589 (M.D. Fla. Nov. 23, 2020).

incorporated with this Report and reflect a total attorney fee award (before further reduction) of $59,512.50.

### D.   Costs

The Court now turns to consideration of the costs claimed by Petitioner. Costs are contemplated by ICARA. *See* 22 U.S.C. § 9007(b)(3). As already observed, the Court previously declared that Petitioner was entitled "the reasonable costs of prosecuting this case." (Doc. 53 at 11).

Petitioner claims the following costs: (1) court fees - $420; (2) attorneys' travel expenses for trial - $2,532; (3) printing documents for trial - $504.50; and (4) Plaintiff and minor child's travel costs for return of child to Australia - $8,139.21. (Doc. 66 at 2). Petitioner has supported his request for fees with receipts. As there are discrepancies in the costs claimed by Petitioner and the receipts in the record, the Court is obliged to consider each cost claimed and whether it was necessary and reasonable.

First, the Court notes that the receipts establish that the filing fee paid in this case was $405, not $420 as claimed. (Doc. 66 at 62). The filing fee of **$405** is an approved cost.

Second, Respondent objects to the travel costs for Petitioner's counsel in the amount of $2,532.00. Receipts appear to confirm that these costs include the following: $412.80 x 2 for airfare between Orlando and Miami for Ms. Lungarelli and Ms. Estevez and $1331.34 for hotel expenses for Ms. Lundarelli and Ms. Estevez (reflecting one hotel room each from February 21 to February 24, 2023). The total of these expenses that is verified through receipts is $2,156.92. It is unclear how Petitioner arrived at the claimed totals of $2,532 and $3,036.50 for attorney travel expenses that are referenced in the fee application. (Doc. 66 at 3).

- 22 -

In any event, I recommend against approving the claimed attorney travel costs. As this Court has observed, "[t]here is no provision in the statute, 28 U.S.C. § 1920, for taxing attorney travel costs to the opposing party." *Ferguson v. Bombardier Servs. Corp.*, No. 8:03-CV-1380-T-30, 2007 WL 601921, at *7 (M.D. Fla. Feb. 21, 2007). Indeed, § 1920 does not authorize the taxation of attorney travel costs. Further, as observed above, it was Petitioner's choice to retain counsel outside of the geographic area in which this case was pending. The undersigned finds that the Petitioner's counsel's travel expenses were thus unnecessary to secure the return of the child.

Third, Petitioner claims $504.50 in costs for printing documents for trial. As already discussed above, this amount is directly attributable to the exhibits and binders required by the Court's pretrial procedures. Accordingly, **$504.50** in printing costs should be approved.

Fourth, Petitioner claims $8,139.21 for his and the minor child's travel costs to return the child to Australia. Respondent objects and contends she should not have to pay for Petitioner's extended luxury vacation in Florida.

Upon review, the receipts establish the following travel costs that are reasonable and that the undersigned finds necessary for the child's return to her habitual residence: (1) Petitioner and the child's airfare from Orlando, Florida, to Brisbane, Australia on February 27, 2023 - $3,977.20 (Doc. 66 at 50); and (2) car rental expense from Friday, February 24, 2023, through Monday, February 27, 2023 - $186.94.

Petitioner has also submitted a receipt for a hotel stay in Aventura, Florida, from Monday, February 13, 2023, through Tuesday, February 21, 2023, totaling $1,488.88, for the purpose of meeting with counsel in preparation of trial. Respondent objects that this expense was not necessary, and the Court agrees. In addition, Petitioner has submitted what appear

to be screen shots of banking activity that may relate to travel expenses such as hotel and uber fees (including various restaurant expenses and two apparent charges for Home2 Suites in Wildwood, Florida). In the format submitted, the Court cannot discern what precisely these expenses represent, for whom they were incurred, or whether they were necessary for the child's return. Consequently, I recommend that the approved travel expenses for Petitioner and the child be limited to the clearly documented cost of airfare to Australia and the car rental expense, for a total of **$4,164.14**.

The total approved costs are **$5,073.64**.

### E.   Whether a Fee Award Would Be Clearly Inappropriate

22 U.S.C. § 9007(b)(3) creates a presumption of an award for necessary expenses, "unless the respondent establishes that such order would be clearly inappropriate." Here, Respondent argues that a fee award would be clearly inappropriate for several reasons. As a preliminary matter, however, the Court observes that it has already at least partially addressed this issue. By Order entered February 23, 2023, the Court expressly cited the "clearly inappropriate" exception to fees under 22 U.S.C. § 9007(b)(3) and found "[t]he Court will therefore award Petitioner the reasonable costs of prosecuting this case." (Doc. 53 at 11).

#### 1.   Good Faith

Respondent first suggests that a fee award would be clearly inappropriate because she had a reasonable basis for thinking that removing her child to the United States was consistent with the parties' shared intent. (Doc. 72 at 3). Without any further explanation, she also states that "Petitioner's actions contributed to Respondent's belief that she could return to the United States." It is undisputed that Petitioner consented to a trip for the child to visit family

in the United States. Respondent's retention of the child in the United States against Petitioner's wishes is what triggered this action.

On this issue, the Court found Respondent's testimony regarding grave risk and shared intent to be lacking in credibility. Further, even assuming Respondent had a good faith belief that she was acting in accordance with the parties' shared intent, Petitioner made his intentions clear in writing at least as early as July 25, 2022. It is undisputed that Respondent retained the child in the United States well past that date, thus necessitating a full-blown trial in this matter. Both subjectively and objectively, Respondent could not have believed in good faith that she was acting consistent with the parties' shared intent given the overall circumstances, not the least of which included her being served with a summons in an action brought under the Hague Convention.

2.    *Petitioner's Actions*

Next, Respondent argues that fees would be clearly inappropriate because Petitioner needlessly increased costs in this action. Respondent contends that the Petitioner initiated the action in state court improperly, engaged in negotiations and "prolonged the litigation and enmity between the parties once this situation began, needlessly increasing the litigation costs involved." (Doc. 72 at 5).

The Court disagrees. At best, the parties were equally responsible for prolonging the litigation. Moreover, the record speaks for itself. Respondent was responsible for retaining the child in the United States against Petitioner's wishes. It is readily apparent that, had Respondent complied with the request that the child be returned to the United States when it was first made in July 2022, this entire litigation would have been avoided. Instead, she remained in the United States with the child, resisted efforts to have the child return to

Australia, contested the petition for the return of the minor child filed in state court, removed the action to federal court, declined to settle the matter, and discharged her prior counsel on the eve of trial. These actions resulted in the necessity of a full-blown trial on the merits and were quite likely against the sage advice of Respondent's prior counsel. Indeed, during the hearing on prior counsel's motion to withdraw, Respondent so much as admitted that she was discharging her counsel because they were advising her to resolve the matter. Yet, if she had done so, she would have considerably minimized the expenses of this litigation. Instead, Respondent persisted with taking her case to trial, a right to which she is fully entitled. But having done so, she cannot then credibly claim that it was Petitioner, rather than she, who is responsible for prolonging the litigation.

### 3.    Financial Considerations

Finally, Respondent argues that a fee award is clearly inappropriate because of Petitioner's financial neglect of the child and his efforts to prevent Respondent from being able to financially support the child. These unsupported contentions are also without merit. Child support and issues related to marital assets and finances are best left to the appropriate court in Australia.

Respondent does, however, also argue that an award of attorney's fees and costs in this case would be a financial hardship. Respondent states:

> The Mother is not working and has incurred an enormous amount of personal debt to finance her defense. The personal debt is in excess of $50,000. Her debt has restricted her ability to travel to Australia to visit the Child, seek counsel in Australia to find legal assistance to seek custody and time-sharing schedule, as well as legal procedures on incurred marital debt. The Mother has undue burden due to her financial circumstances so they are so strained that an award of fees would affect her ability to care for the Child.

(Doc. 72 at 18). In support of her argument, Respondent cites *Romanov v. Soto*, No. 3:21-CV-779-MMH-MCR, 2022 WL 3646325, at *5 (M.D. Fla. Aug. 24, 2022) (stating it was appropriate to consider the mother's financial circumstances when determining the amount of fees to be awarded).

Indeed, there is precedent for taking an across-the-board reduction to a fee award under ICARA where a full award would create a substantial burden. *See Moonga*, 2018 WL 4026020, at *4 (finding a reduction of approximately one-third of fees under ICARA was appropriate considering defendant's claimed financial situation, despite that situation being unsupported by evidence); *Fuentes-Rangel v. Woodman*, No. 2:14-CV-00005-WCO, 2015 WL 12999707, at *4 (N.D. Ga. July 29, 2015) (reducing requested ICARA award by one-third due to respondent's financial condition).

Here, Respondent has offered no documentation in support of her contentions about financial hardship. While she states she is not working, she does not state she is incapable of working. Nonetheless, she has no doubt incurred considerable expense during this litigation, her earning potential is unclear, and issues relating to marital finances likely remain unresolved. Whatever her income, the potential fee award in this case would be a substantial portion of it. As the *Moonga* court observed, that would be "a substantial burden on anyone." 2018 WL 4026020 at *4. Moreover, the Court notes that in his reply to Respondent's memorandum opposing the application for fees, Petitioner does not dispute Respondent's assertions regarding hardship or regarding her strained financial circumstances. (Doc. 73). Accordingly, given the overall circumstances, the Court finds that a reduction of approximately one-third of the total award in this case is appropriate.

### F.      Summary

To summarize, the undersigned recommends that Petitioner's application for fees and costs be granted to the extent that Petitioner should be awarded a total of $45,210.30 (representing $59,512.50 in attorney's fees, plus $5,073.64 in costs, reduced by one-third for financial considerations).

## IV.      Recommendation

For the reasons stated above, I respectfully recommend that Petitioner Ricky Nieuwenhoven's application for attorney's fees and costs (Doc. 66) be granted to the extent that Petitioner should be awarded a total of **$45,210.30**, representing attorney's fees and costs. In all other respects, I recommend that Petitioner's motion be denied.

Recommended in Ocala, Florida on May 18, 2023.


PHILIP R. LAMMENS
United States Magistrate Judge


Copies furnished to:

Counsel of Record
Unrepresented Parties

# Court's

# Exhibit A

**Approved Time Entries** -- The below chart summarizes the approved attorney time entries claimed by Petitioner (not including attorney travel time). The disallowed and reduced entries are also highlighted yellow in the Court's Exhibit B.

| Page within Doc. 66 | Total time in hours approved for entries for Ms. Lungarelli (KL) | Total time in hours approved for entries for Ms. Estevez (EE) | Total time in hour approved for entries for Paralegal (PL) |
|---|---|---|---|
| 6 | 1.7 | 0 | .6 |
| 7 | 3.7 | 6.8 | .3 |
| 8 | .6 | .4 | 0 |
| 9 | 1.1 | 1.2 | .5 |
| 10 | .6 | 2.3 | 0 |
| 11 | 1.8 | .4 | .3 |
| 12 | 1.1 | 0 | .1 |
| 13 | 1.8 | 1.3 | 0 |
| 14 | .3 | 2.1 | 0 |
| 15 | .6 | .2 | 0 |
| 16 | 1.2 | 2.2 | 0 |
| 17 | .7 | 1.3 | .1 |
| 18 | 3.9 | 2.8 | 2 |
| 19 | 1.7 | .5 | 1.7 |
| 20 | 2.1 | 1.1 | .7 |
| 21 | 0 | 0 | 0 |
| 22 | .6 | 2.9 | .2 |
| 23 | .4 | 1.5 | 0 |
| 24 | 4 | .5 | .1 |
| 25 | 1.7 | 7.8 | .4 |
| 26 | 2.5 | 5.1 | .2 |
| 27 | 2.4 | 5.4 | .8 |
| 28 | 2.5 | 6.1 | 1.3 |
| 29 | 0 | 0 | 0 |
| 30 | .8 | 5.7 | .1 |
| 31 | 4.3 | 6 | 0 |
| 32 | 2.8 | 12.3 | 0 |
| 33 | 2.1 | 5.3 | 1.1 |
| 34 | 12.5 | 5.2 | 1.3 |
| 35 | 9.1 | 6.7 | 1.7 |
| 36 | 15.8 | 17.6 | .1 |
| 37 | 2.8 | 5.5 | .7 |
| 38 | 0 | 0 | 0 |
| **TOTAL** | **87.2** | **116.2** | **14.3** |

**Lodestar Calculation** – The below chart summarizes the Court's Lodestar calculations.

| Timekeeper | Total Hours Approved | Multiplied by timekeeper's reasonable hourly rate | Total Fee for timekeeper |
|---|---|---|---|
| Karen Lungarelli | 87.2 + 3.5 hours travel time = 90.7 | $300/hour | $27,210 |
| Erica Estevez | 116.2 + 3.5 hours travel time = 119.2 | $250/hour | $29,800 |
| Paralegal | 14.3 | $175/hour | $2,502.50 |
| **Total Attorney Fee Award** | | | **$59,512.50** |

**Total Award Calculation** – The below chart summarizes the Court's final calculations applying a 30% reduction for financial hardship considerations.

| Total approved costs | Total approved attorney's fees | Total potential award | Reduced by 30% for financial hardship considerations | Total recommended award |
|---|---|---|---|---|
| $5,073.64 | $59,512.50 | $64,586.14 | Minus 30% reduction | **$45,210.30** |

**Recommended Award Compared to Petitioner's Claimed Attorney's Fees and Costs**

| | |
|---|---|
| Petitioner's claimed Attorney's Fees: $101,117 | Recommended Total Attorney Fee Award: $59,512.50 (before reduction) |
| Petitioner's claimed costs: $11,595.71 | Recommended Total Costs: $5,073.64 (before reduction) |
| Petitioner's claimed total award: $112,712.71 | Recommended Total Award before 30% reduction: $64,586.13 |
| | **Recommended Total Award after 30% reduction: $45,210.30** |